(Opinion published 52 N. W. Rep. 926.)

---

## GEO. A. WHEATON *et al. vs.* SWAN BERG *et al.*

Argued May 9, 1892.  Decided July 15, 1892.

### Reversal as to Certain Respondents.

Order appealed from reversed on motion as to certain respondents, they not appearing in opposition thereto.

50  525
51  248
50  525
53  256
50  525
55  6

### Mechanic's Lien Law of 1889 Applicable.

An agreement for the sale of building material made prior to the 1st of October, 1889, but which was within the statute of frauds, because not in writing, was performed by the delivery of the material subsequent to that date. *Held*, that the lien law of 1889, which went into effect on that date, was applicable.

### Bringing in Parties.

In an action to enforce mechanics' liens, the bringing in of a proper party at the time of the trial *held* not erroneous, no prejudice being shown.

**Liability of Vendor under Laws 1889, ch. 2CO, § 4.**

A landowner (appellant) entered into an executory contract for the sale of the property which was afterwards forfeited for the default of the purchaser. In the mean time the latter had gone into possession, and erected a house on the land; the respondents furnishing to him materials and labor therefor, on account of which they seek to subject the estate of the landowner to liens. The contract for the sale of the land made no provision for the construction of buildings except (in substance) that all improvements which might be made should become the property of the vendor. *Held*, that this added nothing to the legal effect of the contract, and did not bring the case within section 4 of the lien law.

**Same under Laws 1889, ch. 200, § 5.**

Section 5 of the lien law *held* applicable to such executory contracts. *Mitchell*, J., dissenting.

**Laws 1889, ch. 200, § 5, Construed.**

The provision in section 5, subjecting the estate of a landowner to liens for improvements made by others with his knowledge, unless he shall give the notice of his want of consent as therein prescribed, construed as creating a rule of *prima facie* evidence, and as casting upon the landowner the burden of excusing his default to comply with the law.

Appeal by Christian B. Nilson, one of the defendants, from an order of the District Court of Hennepin County, *Pond*, J., made July 10, 1891, refusing a new trial.

On August 29, 1889, the appellant owned lot eight, (8,) block five, (5,) Monroe Street Addition to Minneapolis. On that date he entered into a contract for the sale of the lot to Swan Berg for the sum of $1,575, to be paid within ninety days, with eight per cent. interest, giving Berg meanwhile the possession. This contract did not provide for the erection of a building on the lot by Berg, but there was a clause to the effect that in case of nonperformance by the vendee, "all the improvements on said premises, or which may be made thereon," should become the property of the vendor. The lot was vacant at the time the contract was made. In September, 1889, Berg began the erection of a house on the lot. At just what time Nilson learned that a house was being erected on the lot is doubtful, but it was conceded that after the foundation was com-

pleted, some time in September, 1889, he knew that the building was being constructed. Nilson never served or posted any notice as required by Laws 1889, ch. 200, § 5. Berg, failing to pay according to the contract at the expiration of the ninety days, Nilson extended the time for payment fifteen days, and a new contract was entered into between them of the same import as the first, except that time was made of the essence. On February 14, 1890, Berg had failed to pay anything under the contract; most of the material and labor for the house had been furnished, and various liens had been filed therefor. On that day Nilson gave written notice to Berg and the various lien claimants that he would require performance within thirty days or treat the contract as forfeited. Neither Berg nor the lienors performed the contract.

The plaintiffs, Wheaton, Reynolds & Co. furnished Berg materials for the erection of the house, amounting in value to the sum of $549. These materials were furnished and used in the erection of the house between October 4 and December 3, 1889, but the greater part thereof were furnished under a verbal contract made before October 1. Thompson Brothers; Standard Menomonie Brick Company; Frank P. Nicoll, as assignee of J. P. Gray; Twin City Sidewalk & Pavement Company; Farnham Marble & Mantel Company; P. O. Simonson; Ole Johnson; Ole Skjolberg; Robert Thompson and C. F. Warn, severally furnished material for or performed labor in the construction of the building, under contracts with Berg, made at various periods between October 1, 1889, and April 17, 1890. The Pineville Lumber Company, between September 7, 1889, and December 30, 1889, furnished materials for the erection of the house, under a contract with Berg made September 7, 1889; Andrew Moe, between September 3, 1889, and November 13, 1889, performed work and labor on the house under a contract with Berg made September 3, 1889.

This action was commenced early in 1890, to foreclose the lien claimed by the plaintiffs on the lot. On May 9, 1890, the court made an order that all lien claimants be brought in and made parties to the action as required by Laws 1889, ch. 200. This was done, all the various lien claimants above named were made parties

to the action, except C. S. Warn. The case was tried January 5, 1891, and Warn was, during the trial, permitted to file his answer and prove his lien. The complaint and answers of the defendant lien claimants did not allege that the contract with Berg had been forfeited so as to bring their rights to liens under section 4 of the Lien Law of 1889, but Nilson's answer set up the forfeiture of the contract.

The case was tried January 5, 1891. The court held that all of the claims were specific liens against the interest of Nilson in the property, except those of Moe and the Pineville Lumber Company. They were contracted before the Law of 1889 went into effect. These two claims were held to be liens on the interest of Berg in the property, and a separate sale of that interest was ordered to be first made. All the lien claimants were to share *pro rata* in the proceeds. Afterwards a sale of Nilson's interest was to be made. All except Moe and the Pineville Lumber Company were to share in the proceeds. The defendant Nilson made a motion for a new trial, which was denied, and he appealed.

*Ueland & Holt*, for appellant.

It was error for the court to proceed with the trial before all the lien claimants had been brought into court; and afterwards to allow Warn to answer and prove his claim, without giving time to meet his answer. *Finlayson* v. *Crooks*, 47 Minn. 74; *Northwestern Pavement Co.* v. *Norwegian Seminary*, 43 Minn. 449.

It was error to allow plaintiffs' lien under Laws 1889, ch. 200, for the material that was furnished under a contract made before October 1st. *O'Neil* v. *St. Olaf's School*, 26 Minn. 329. It makes no difference that this contract was within the statute of frauds; after performance, it determined the rights and liabilities of the parties the same as if valid in the first instance. The contract between Berg and Nilson was not contingent upon the erection of the building, and hence the liens cannot be upheld under section 4 of the Lien Law. Nor was the labor or material furnished at the instance of Nilson, under section 1. These liens must be sustained, if at all, under section 5, and that section, if applicable at all, is unconstitu-

tional. It attempts to lay down a rule of evidence under which the owner is made to consent to the taking of the property without consenting at all. He must serve notices, or post notice on the premises. This he may be unable to do on account of absence, or because he has not the right of possession, as in this case, or perhaps because he is a minor or an insane person. This is not due process of law. *Meyer v. Berlandi,* 39 Minn. 438; *Hurlbert* v. *New Ulm Basket Works,* 47 Minn. 81, and cases cited; Cooley, Const. Lim. 453; *Smith* v. *Gill,* 37 Minn. 455.

*Reed & Kerr,* for respondents.

It was in the discretion of the court to allow Warn to answer at the trial and to prove his lien, and no prejudice appears to have resulted.

Wheaton & Reynolds made no valid contract with Berg for the materials before October 1st. It was but an oral agreement and within the statute of frauds. There was no contract until the first material was delivered.

Laws 1889, ch. 200, § 5, is constitutional. The knowledge by the owner, that a building is being erected on his land, and his failure to give the notice required, is consent within the meaning of the rule that a lien can be created only by consent. *Husted* v. *Mathes,* 77 N. Y. 388; *Burkitt* v. *Harper,* 79 N. Y. 273. Similar provisions in the lien laws of other states have been held constitutional. *Fuquay* v. *Stickney,* 41 Cal. 583; *Moore* v. *Jackson,* 49 Cal. 109; *West Coast Lumber Co.* v. *Newkirk,* 80 Cal. 275; *Harlin* v. *Stufflebeem,* 87 Cal. 508; *Allen* v. *Rowe,* 19 Or. 188; *Gould* v. *Wise,* 18 Nev. 253; *Cook* v. *Goodyear,* 79 Wis. 606.

DICKINSON, J. This is an action to have established and enforced a mechanic's lien upon a lot of land owned by the defendant Nilson, but which he had contracted to sell to the defendant Berg. Berg interposed no defense. The numerous defendants, other than Berg and Nilson, also asserted claims for mechanics' liens upon the property, which they sought to have adjudged and enforced in this action. These various lien claims having been sustained by the decision of the

court, and judgment having been directed for the enforcement of the same (with some exceptions hereafter specified) by sale of the property, including the interest of Nilson therein, he moved for a new trial, which was refused, and he alone prosecutes this appeal from the order refusing a new trial.

The defendants Andrew Moe and the Pineville Lumber Company not appearing in opposition to the appellant's motion that the order appealed from be reversed as to them, the motion should be granted, and the order for judgment, so far as it involves the charging of the amount of the recovery of those two defendants as a lien upon the real estate, and the enforcement of such lien by sale, is reversed. It will hence be unnecessary to consider some assignments of error which relate merely to the claims of these parties, and to the manner in which they were directed to be enforced.

The other defendants, as to whom a like motion was made, having appeared by Messrs. Reed & Kerr, the attorneys for the other respondents, and asked that the case as to them be considered upon the briefs submitted in behalf of the other respondents, this is allowed, and the motion to reverse, as for their default, is denied.

The appellant, Nilson, the owner of the lot in question, entered into a written contract with Berg for the sale of it to him, on the 29th of August, 1889. The contract provided that the entire purchase price ($1,575) should be paid on or before ninety days thereafter. It was expressly provided in the written contract that all improvements on the premises, or which might be made thereon, should become the absolute property of the vendor, and held as additional security for the payment of the purchase price, and should be forfeited by the purchaser in case of his failure to comply with the conditions of the agreement.

Under this contract Berg went into possession, and commenced the erection of a dwelling house on the premises. It was found as a fact by the court that he purchased the lot for that purpose, and that the appellant knew this when he contracted to sell; that the appellant knew that the house was being constructed from the time when building operations were commenced; and that he never made any objection thereto. While, from the evidence, it might be doubted

whether Nilson knew anything about the building operations until after the foundation was completed, it is conceded that at that stage of the work, some time in September, he did know that the building was being constructed. As by this decision the lien upon the appellants' estate will be sustained only for material and labor supplied subsequent to October 1st, it is unnecessary to consider whether the court erred in finding that Nilson had knowledge of the improvement from the commencement of the building operations.

It further appeared from the evidence that in the latter part of November of the same year, at the expiration of the time within which the purchase price was agreed to be paid, Nilson agreed to extend the time of payment to the 14th day of December, and a new contract was executed to that effect, by the terms of which the specified time of payment was made an essential part of the agreement. The purchase price was never paid, and on the 14th of February, 1890, after all the materials and labor had been contributed for which liens are claimed, except as to some part of two of the claims, the appellant gave notice to Berg, and to the lien claimants, that the contract of sale would be forfeited, unless the purchase price should be paid before the 15th day of March.

No notice was ever served or posted by the appellant, such as is prescribed by Laws 1889, ch. 200, § 5.

The claim of the plaintiff Wheaton, Reynolds & Co. is for lumber purchased from them by Berg and furnished for this building between the 4th of October and the 3d of December, pursuant to a verbal contract which the court found to have been made after October 1, 1889. It appears from the evidence that the agreement for the sale of the greater part of this was made before October 1st, although none of the material was delivered until after that date. It is hence claimed, on the authority of *O'Neil* v. *St. Olaf's School*, 26 Minn. 329, (4 N. W. Rep. 47,) that the lien law of 1889, which took effect October 1st of that year, is not available to the lien claimant. But we hold otherwise, for the reason that, the verbal agreement being within the statute of frauds, it only became effectual and enforceable as a contract by the delivery after October 1st. Hence the finding of the court as to the time of the agreement is in accordance with

the legal effect of the transaction, and the law of 1889 is applicable.

The defendants Frank F. and Noble G. Thompson, (Thompson Bros.;) Standard Menomonie Brick Company; Frank P. Nicoll, as assignee of J. P. Gray; Adam Gilles, August Anderson, and F. L. Whitcomb, (Twin City Sidewalk & Pavement Company;) P. O. Simonson; the Farnham Marble & Mantel Company; J. S. Cusick; Ole Johnson; Ole Skjolberg; Robert Thompson; and C. F. Warn— severally furnished material or did labor for the construction of the building under contract with Berg, during various periods between the 1st day of October, 1889, and the 17th day of April, 1890.

The mere fact that one of the defendants (Warn) was not brought in as a party, nor his claim interposed by answer, until after the commencement of the trial, constitutes no ground for a reversal. It is immaterial when he was joined as a party, unless the appellant was prejudiced by being unprepared to meet the claim thus presented; and the settled case does not show surprise, or that opportunity was sought to produce other evidence. Section 10 of the lien law makes liberal provision for the addition of new parties at any time before final judgment, and even after judgment; and the court would, of course, upon the bringing in of a new party, allow, upon application therefor, such opportunity as might be reasonable for adverse parties to meet the claims of any such new parties.

A general objection to the calling of the defendant Berg as a witness for cross-examination under the statute (Laws 1885, ch. 193) was overruled. Whether the statutory rule allowing such a course of examination was applicable we need not consider; for the nature of the examination of the witness was not such as to make this a matter of any practical importance.

The point is made that the answers of the defendants Skjolberg and Warn do not state facts sufficient to constitute a cause of action. The defect specified is that the answers were framed with a view of showing a right of lien under section 4 of the statute, but that there is no allegation that the contract of sale (between Nilson and Berg) had been forfeited, so as to bring the case within the terms of that section. This objection cannot avail the appellant, for he by his answer has evidently intended to set forth the fact of the forfeiture of

the contract, thereby supplying the alleged defect. But, aside from this, it should be said that the liens do not rest upon the provisions of section 4, but rather fall under section 5. The provision in the contract, that all improvements which might be made upon the land should become the property of the vendor, to which we have more fully referred above, is not regarded as having the effect to bring the case within the terms of section 4, which relates to executory contracts of sale "contingent upon or providing for the erection * * * by the vendee of any house," etc. That clause in this contract imposed upon the contracting purchaser no obligation to build, nor had it any legal effect with respect to the title or the property rights of the parties as to the building which was erected by the purchaser. That was in its nature a part of the real property, and would have become legally the property of the vendor, as the owner of the soil, if no such stipulation had been inserted in the contract. If the estate of the owner became chargeable with these liens under the statute, so that notwithstanding the forfeiture of the contract of purchase the land was still holden for the payment of the debts of the contracting purchaser, it must have been by force of section 5 of the statute. The building was not constructed under any contract with the owner of the land, nor at his instance, so as to bring the case within section 1 of the statute; and his consent to the making of the improvement, at the possible ultimate expense of his estate, is to be inferred only by reason of his failure to give notice of his dissent, as provided in section 5. That section is as follows: "Sec. 5. Every house, mill, manufactory, or other building or appurtenance, and every structure or other improvement mentioned in sections one (1) and two (2) of this act, (excepting boats, vessels, or other water craft,) erected, constructed, altered, removed to, or repaired upon any land, with the knowledge of the owner of such land, or of any person having or claiming an interest therein otherwise than as a *bona fide* prior mortgagee, incumbrancer, or lienor, shall be held to have been erected, constructed, altered, removed, or repaired at the instance of such owner or person, so far only as to subject his interest to a lien therefor, as in this section provided; and such interest so owned or claimed shall be subject to any lien given by the provisions of this act, unless such owner or

person shall, within five (5) days after he shall have obtained knowledge of the erection, construction, alteration, removal, or repair aforesaid, give notice that his interests shall not be subject to any lien for the same by serving a written or printed notice to that effect personally upon all persons performing labor, or furnishing skill, material, or machinery therefor, or shall, within five (5) days after he shall have obtained the knowledge aforesaid or knowledge of the intended erection, construction, alteration, removal, or repair aforesaid, give such notice as aforesaid by posting and keeping posted a written or printed notice to the effect aforesaid, in some conspicuous place upon said land, or upon the building or other improvement situate thereon. But no lien shall be allowed, as against a lessor, for repairs made by or at the instance of a lessee, and nothing in this section contained shall apply to such vendor as is mentioned in section four (4) of this act."

The appellant argues that to construe this provision as being applicable to such a case as this, where the landowner has surrendered possession under a simple contract of sale, is inconsistent with the other features of the law, as contained in section 4, and the exception in section 5, as respects prior mortgagees and incumbrancers. But the terms of section 5 are too plain and explicit to permit a construction which should exclude such cases as this from its operation. The provisions referred to are not inconsistent, for they relate to different cases or subjects. Section 4 is not applicable in all cases where the landowner has contracted to sell, but only in cases where the terms of the contract *express*, as indicated in the law, the consent of the vendor to the making of such improvements as under the law may give rise to liens for material or labor; and in such cases no notice of dissent on the part of the landowner would be effectual to exempt his estate from liens. Section 5 applies to other cases where the consent of the owner has not been thus expressed. It may be that the law was not wisely framed in all of its parts, but we cannot undertake to reconstruct it.

But the validity of this part of the law is called in question. It is to be taken as a premise, not now to be controverted, that laws which subject the property of a person to liens for improvements

made thereon by another can only be sustained upon the theory that the owner has consented thereto; and hence the circumstances must be such as to show consent, or to justify an inference of it. *Meyer v. Berlandi*, 39 Minn. 438, 442, (40 N.W. Rep. 513,) and cases cited. It is not necessary that express consent be shown. It may be inferred from mere silence and nonaction on the part of the owner, when the circumstances are such as to make it obviously his duty to speak or act if he would avoid the imputation of consent. This statute undertakes to regulate, as may be done within proper limits, the conduct of the landowner who knows that buildings are being erected on his land. Those who may be engaged in contributing labor or material which go to the improvement of the land may often have reason to suppose that the work is being carried on at the instance or with the consent of the landowner. It is important to such persons that, if possible, it be made known then if the owner's consent be wanting, and that, therefore, they cannot subject the property to liability for the labor or material supplied by them for its improvement. Hence the statute, in effect, makes it the duty of the owner, who knows of the improvement being made, to give the prescribed notice if he would avoid the inference that it is done with his consent. From the neglect of the duty created by statute the inference follows. But it would seem to be impossible to construe this provision as making the mere neglect to give the specified notice *conclusive* upon the landowner in all cases. The circumstances must be such that he can comply with the statutory requirement, or he cannot be thus concluded. It is beyond the power of the legislature to subject one's property to such a liability by reason merely of his failure to perform a specified act arbitrarily prescribed by statute, if the circumstances are such as to render performance impossible. Consent cannot be conclusively implied from mere silence, when the circumstances are such that dissent is impossible; and the law must be construed with reference to such a state of facts, for it is not unlikely to occur. Suppose, for instance, that a landowner is informed that some stranger is building a house on his land, he being at the time at such a distance from the premises or so situated that it is impossible for him to give the prescribed notice of his dissent

within the five days allowed by statute therefor; or that, directly after being informed of such a fact, he becomes incapable of acting by reason of insanity or sickness; or that he is an infant of such an age that no legal responsibility can rest on him. Other illustrations may readily be supposed. Such cases are not excepted from the terms of the statute, which are comprehensive and general. It would be difficult to construe the statute as not applying to such cases. It was enacted as a *law*, and the question whether it is applicable or not to any particular case cannot well be left to be determined by the fact as to whether, in that particular case, the requirement respecting the giving of notice could have been complied with. But it would be gross injustice in such cases as have been supposed to *conclusively* hold the landowner to have *consented* to the wrongful acts of a stranger, and hence to have submitted his property to liability for the debts of another, merely because he failed to do what it was physically impossible for him to do. So construed, the law could not be sustained, for it would deprive the owner of his property without due process of law, allowing a mere stranger, by his own wholly wrongful act, to incumber the property, the owner being powerless to prevent it by reason of the impossibility of complying with an arbitrary requirement of the statute.

But some reasonable effect should be given to the statute if it be possible; and this may be done by construing the statutory presumption, which springs from the failure to give notice, as being of a *prima facie* nature rather than *conclusive*, and as imposing upon the landowner who, knowing the fact of the improvement, has failed to give the prescribed notice, the burden of relieving himself from the statutory imputation of having consented to what was being done, by proof of his inability to give the prescribed notice of his dissent, and that in fact the improvement was made without his authority or consent. As the statute was obviously intended to establish a *rule of evidence*, and as it cannot be sustained if the statutory presumption is to be construed as *conclusive*, but may be if it has the qualified effect which we have suggested, we conclude that it must be so construed. The language of the law does not forbid this construction, and there are apparent reasons which may have led the legislature

to impose the burden of proof on the party who has peculiar knowledge concerning the matters to which evidence is to be directed.

The result of this construction of the law, as applied to this case, is that the court was justified in holding Nilson's estate chargeable with liens for material and labor contributed for the construction of the building subsequent to the 1st of October. The case shows no controlling reason, if it discloses any reason at all, to oppose the presumption that the improvement was made with Nilson's consent.

The reversal as to the defendants Moe and the Pineville Lumber Company eliminates the feature of two separate sales to which objection is urged by the appellant. The direction for judgment in favor of the other defendants will be modified by making the sale for the satisfaction of their liens absolute, instead of its being conditioned upon a prior sale in favor of the defendants Moe and the Pineville Lumber Company. With that modification the order appealed from, as to the defendants, excepting the two last named, is affirmed. Notwithstanding this modification, the respondents, other than Moe and the Pineville Lumber Company, will be entitled to costs.

MITCHELL, J., *(dissenting.)* I think that section 4 of the lien law was intended to cover all the cases where the interest of the vendor on an executory contract of sale should be liable for buildings erected by the vendee, and that, notwithstanding the peculiar language used, the last clause of section 5 was intended to exclude from the provisions of that section all vendors upon executory contracts of sale, and not merely those whose contracts were contingent upon or provided for the erection of buildings by the vendee. This construction is in harmony with the general policy of the section, as indicated by the exception of mortgagees and lessors from the operation of its provisions. It is also the only construction that will lead to any reasonable result, for there is no conceivable reason why vendors whose contracts are contingent upon or provide for the erection of buildings by the vendees should be exempted from the provisions of section 5, and other vendors not; thus placing the former in so much more advantageous position than the latter. If there is to be any discrimination between them, there is every reason why it should be just the

other way.    While this construction may require taking some liberties with the literal language of the statute, yet I think it is permissible, in order to avoid an unreasonable and almost absurd result, and to arrive at what I think was evidently the legislative intent, however imperfectly expressed.

Without expressing any opinion as to the correctness, in other respects, of the construction placed by the court on section 5, on the ground above indicated, I dissent.

(Opinion published 52 N. W. Rep. 926.)