(122 N. W. 378.)

---

LARS CHRISTIANSON, DOING BUSINESS AS CHRISTIANSON DRUG COMPANY v. KATE HUGHES.

Opinion filed June 29, 1909.

**Mechanic's Liens — Wife's Separate Property — Consent of Owner.**

> Where a husband, without the consent and against the protests of the wife, contracts for and purchases material to paint a dwelling house on land owned by the wife, who, having no knowledge of where he purchased the materials, did not give notice of her objection to the improvements on the dwelling house to the party who furnished said materials, the materialman, under the evidence in this case, acquires no lien under section 6237 of said Revised Codes of 1905 for the materials furnished.

Appeal from District Court, Cass county; *Chas. A. Pollock, J.*

Action by Lars Christianson, doing business as the Christianson Drug Company, against Kate Hughes. Judgment for plaintiff, and defendant appeals.

Reversed.

*Turner & Wright,* for appellant.

*Pierce, Tenneson & Cupler,* for respondent.

CARMODY, J.   This case, which was brought for the foreclosure of a mechanic's lien, is in this court for trial de novo. The complaint alleges that the defendant is the owner of the premises against which the plaintiff seeks to establish a lien, and also the making of the contract, on May 15, 1906, with one D. E. Hughes, the hus-

band of the defendant, under which the plaintiff was to furnish certain materials for the construction, alteration, or repair of a certain building, situate upon land belonging to the defendant, which was then occupied by the said D. E. Hughes and the defendant as a dwelling house. It alleges that between May 15, 1906, and June 29, 1906, at the request of the said D. E. Hughes, and by and with consent of the defendant, the plaintiff sold and delivered to the said D. E. Hughes building materials of the value of $77.10. It further alleges that said materials were furnished for, and were used in and upon, the construction, alteration, or repair of said dwelling house, and by and with the consent of the said defendant. The answer puts in issue every material allegation of the complaint, except that defendant admits her ownership of the premises in dispute, and that the same constitute the homestead of herself and husband. The case was tried to the court without a jury, and resulted in a personal judgment in favor of the plaintiff, and against the defendant, for the sum of $122.02 damages and costs, adjudging a lien therefor upon the premises in controversy, and directing the foreclosure thereof. The personal judgment was rendered inadvertently.

The plaintiff established at the trial that he sold to D. E. Hughes paint, oil, white lead, and other material used in painting the said dwelling house, and states the circumstances as follows: D. E. Hughes on or about May 15, 1906, came into the store of plaintiff and said: "Lars, I want to get some paint to paint my house, and as soon as I get through, I will come in and give you a check for it." The plaintiff further testified that D. E. Hughes at one time was running a wagon shop in Fargo, and that he purchased from plaintiff paints and varnishes for painting buggies, also paint the year before to prime his house, and that he paid for them. The testimony further shows that $10 worth of the paint was sufficient to paint the house one coat; that D. E. Hughes was sent to the insane asylum on the 22d day of June, 1906; that after his incarceration in the asylum the defendant got Mr. Nelson, a painter in Fargo, to paint the house one coat, and that the paint then used cost less than $9. This last-mentioned painting was necessary, on account of the condition of the building after the painting done by D. E. Hughes with the materials he purchased from plaintiff. The plaintiff does not claim to have ever had any conversation, understanding or agreement with defendant on the subject. He relies

solely upon the implied consent on her part to use the materials upon her house, and to the furnishing of them by the plaintiff. Defendant testified that she never consented to the use of the materials, or of the purchase of them for her house. She several times protested to her husband against painting the house with these materials. She told him he had painted the house the year before, and that it did not need painting, and that they could not afford it. She did not know, she never knew, where D. E. Hughes was procuring the paint. He had money with which he could have paid for the paint. He said he was paying for it. She never received any notice from plaintiff that he was extending credit for the materials. She testified that D. E. Hughes bought paint all his life, and she neved paid any attention to it. She did not know where he bought it, or who furnished the paint the year before. She did not give notice to the plaintiff of her objection to his furnishing the materials. The alleged lien was duly filed on the 27th day of September, 1906.

Section 6237, Rev. Codes 1905, is as follows: "Any person who shall perform any labor upon or furnish any materials, machinery or fixtures for the construction or repair of any work of internal improvement or for the erecting, alteration or repair of any buildings or other structures upon land, or in making any other improvements thereon, including fences, sidewalks, paving, wells, trees, grades, drains or excavations under a contract with the owner of such land, his agent, trustee, contractor or subcontractor, or with the consent of such owner, shall upon complying with the provisions of this chapter have  *  *  *  a lien upon such building, erection or improvement and upon the land belonging to such owner.  *  *  *  The owner shall be presumed to have consented to the doing of any such labor or making of any such improvement, if at the time he had knowledge thereof, and did not give notice of his objection thereto to the person entitled to the lien." The case must turn largely upon the construction to be placed upon said section 6237 of the Revised Codes of 1905. It is not claimed, on the part of the plaintiff, that he had at any time, either directly or indirectly, any contractual relation with the defendant, or that her husband was either the agent, trustee, contractor or subcontractor of the defendant. He admits that his contract was with D. E. Hughes, the husband of the defendant alone. He claims, however, that the defendant, having had actual knowledge that the improve-

ments were being made, and having failed to give the notice required by said section 6237, must be held to have impliedly consented to the furnishing of the materials. He contends that this is the construction placed upon similar statutes, and cites a large number of cases to sustain his contention. An examination of these cases shows that they were decided under statutes unlike ours. Section 3509, Rev. Laws Minn. 1905, as far as material here, reads as follows: "But any person who has not authorized the same may protect his interest from such liens by serving upon the persons doing the work or otherwise contributing to such improvement, within five days after knowledge thereof, written notice that the improvement is not being made at his instance, or by posting like notice and keeping the same posted in a conspicuous place on the premises." The mechanic's lien statutes of California and Oregon are practically the same as the statutes of Minnesota as far as giving notice is concerned. In some of the other states the statutes require the owner to file notice of his objection in the office of the county clerk.

In Wheaton v. Berg, 50 Minn. 525, 52 N. W. 926, the defendant Nilson sold a vacant lot to defendant Berg, the purchase price to be paid within 90 days. The sale contract did not provide for the erection of a building, but provided that in case of non-performance by the vendee "all the improvements on said premises or which may be made thereon" should become the property of the vendor. Berg erected a house upon the premises. It was found as a fact by the court that he purchased the lot for that purpose, and that Nilson knew this when he contracted to sell; that he knew that the house was being constructed from the time when the building operations were commenced, and that he never made any objections thereto. Neither did he post any notice on the premises, as required by said section 3509 hereinbefore quoted. Held, that the parties who performed labor on said dwelling house, or furnished material therefor, were entitled to liens on the premises. In Harlan et al., v. Stufflebeem et al., 87 Cal. 508, 25 Pac. 686, the court found that the owners of the land knew, at the time of the construction of the buildings, and of all the terms and conditions of the contract between Stufflebeem and the plaintiffs at the time it was made, and also that on the completion of the work, he had made a payment to the plaintiffs on account thereof. The other cases cited by plaintiff hold that, where the owner of the land has knowledge of, and consents to the

performance of the labor and the furnishing of the material by the lien claimants under a contract with a person other than the owner, the parties so performing labor and furnishing materials are entitled to liens.

Plaintiff does not claim that defendant had any knowledge that he was furnishing materials which were used on her house. He relies solely upon the fact of her knowledge that the house was being painted, her knowledge of the improvements, as sufficient to charge her with the duty of acertaining the further fact that plaintiff was furnishing materials, for such improvements, and giving him notice of her objection thereto. This we do not think is the correct construction of said section 6237. If it is, D. E. Hughes could have procured the materials from several different persons, or could have had them shipped from a foreign state, and the defendant would have had to hunt up the different parties supplying the materials, or, if they were shipped from a foreign state, find out who shipped them, and give the proper party notice that she objected to the making of the improvement. Such we do not think was the intention of the Legislature in passing the law. In the case at bar the defendant never consented to the improvement being made, or to the furnishing of the materials therefor by plaintiff, or any other person. She objected to the improvements; her husband was not her agent; the contract was not made by her, or in her behalf, and she agreed to none of the terms, conditions, or agreements thereof. She believed her husband to be, and he was in fact, financially able to pay for the materials, and had in fact bought paint from plaintiff for a number of years, and always paid for it. She did nothing to mislead the plaintiff. If her husband could be allowed to incumber the estate of the defendant, against her will and protest, such rights in her separate property granted to her by law would be of little value, and the husband could readily, and in this manner, contract her estate away, and bring her to financial ruin. Under the circumstances, in this case to allow a lien, and thus permit her to be stripped of the title to her estate, and possibly deprive her of a shelter for herself and family, would be contrary to equity and subversive of that protection which the law intended should be thrown around her separate estate.

We do not think it necessary to pass upon the contention of appellant that the presumption mentioned in said section 6237 is a rebuttable one, as it has not application to the facts in this case. We

think such presumption only applies where the owner of the premises has such knowledge of the performance of the labor and the furnishing of the materials as would, by her silent acquiescence in such improvements, create an estoppel against her right to claim a want of consent. In the case at bar defendant evidently did everything within reason in the way of protesting against the making of such improvement. She did not protest to plaintiff against furnishing the paint, but this was not required, as she had no knowledge that he was furnishing the same; and, in view of this fact, it would a be manifestly unreasonable construction of the statute to require her to seek him out in order to give him notice of her objection.

Section 3314 of the Statutes of [Wisconsin of 1898, as far as material here, reads as follows: "Shall also attach to and be a lien upon the real property of any person on whose premises such improvements are made, such owner having knowledge thereof and consenting thereto." Section 3314, supra, is nearer like section 6237 of the Revised Codes of 1905 than the mechanic's lien statutes of any of the states in which the cases cited by respondent were decided. We believe that no case can be found in which a lien was upheld under facts similar to those in the case at bar. In most of the cases cited by respondent the owner not only had knowledge of the facts, but expressly consented to the improvements being made. North v. La Flesh, 73 Wis. 520, 41 N. W. 633; Lumber Co. v. Mosher, 88 Wis. 672, 60 N. W. 264. In the following cases it has been held that a party performing labor or furnishing material for improvements on land, under a contract with a person not the owner, was not entitled to a lien: Coorsen v. Ziehl, 103 Wis. 381, 79 N. W. 562; Huntly v. Holt, 58 Conn. 445, 20 Atl. 469, 9 L. R. A. 111; De Klyn v. Gould, 165 N. Y. 287, 59 N. E. 95, 80 Am. St. Rep. 719.

In Coorsen v. Ziehl, supra, the court, speaking through Justice Bardeen, said: "The proof is that she (the wife) was not consulted before the contracts were made, and that she did not in any way sanction or direct the work as it progressed. She lived in the building with her husband, and undoubtedly knew of the work as it progressed, and from these facts it is argued that she is brought within the terms of section 3314." He then cites cases relied upon by counsel for the plaintiff, and continues: "But there is a clear distinction between these cases and the case at bar. In each case

there was proof of the express consent of the owner to the erection of the building upon which the lien was claimed. Here there is not such proof. * * * 'Consent cannot be inferred from mere silence under these circumstances." In Huntly v. Holt, supra, the court said: "Consent means the unity of opinion; the accord of minds; to think alike; to be of one mind. Consent involves the presence of two or more persons, for without at least two persons there cannot be a unity of opinion of an accord of minds, or any thinking alike." When the statute uses the words "by the consent of the owner of the land," it means that the person rendering the service or furnishing the materials and the owner of the land on which the building stands must be of one mind in respect to it." In De Klyn v. Gould, supra, the court said: "Mere acquiescence in the erection or alteration with knowledge, is not sufficient evidence of the consent which the statute requires. There must be something more. Consent is not a vacant or neutral attitude in respect of such material interest to the property owner. It is affirmative in its nature. It should not be implied contrary to the obvious truth, unless upon equitable principles the owner should be estopped from asserting the truth." See also, Clark v. North, 131 Wis., 599, 111 N. W. 681, 11 L. R. A. (N. S.) 764, and McClintock v. Criswell, 67 Pa. 183. True, the mechanic's lien statutes of Wisconsin and other states do not contain the presumption mentioned in section 6237; but, as hereinbefore stated, we think this presumption has no application to the facts in the case, at bar.

The trial court will reverse its judgment, and enter judgment dismissing the complaint herein.

Fisk and Ellsworth, JJ., concur; Morgan, C. J., not participating.

SPALDING, J. (concurring specially). I concur in the reversal but not for the reasons given by my Associates. They work a judicial repeal of the statute applicable, to which I cannot assent.