MASTER ASPHALT COMPANY,
Respondent,

v.

VOSS CONSTRUCTION COMPANY,
INC., OF MINNEAPOLIS, et al.,
Defendants,

Henry S. Reinke, et al., petitioners,
Appellants,

Southside Electric, Inc., Farmers Market
Annex, Inc., Respondents.

Nos. C2–93–2574, C9–94–458.

Supreme Court of Minnesota.

Aug. 4, 1995.

Joan M. Quade, Scott M. Lepak, Minneapolis, for appellant.

James A. Beitz, Michael C. Hagerty, Minneapolis, for Master Asphalt Co.

William G. Peterson, Michael C. Mjoen, William Peterson & Assoc., Ltd., Bloomington, for Southside Elec., Inc.

James M. Lockhart, Lommen, Nelson, Cole & Stageberg, Minneapolis, for Farmers Market Annex, Inc.

## OPINION

STRINGER, Justice.

Respondents Master Asphalt Company (Master Asphalt) and Southside Electric, Inc. (Southside) commenced this action to foreclose mechanics' liens for labor and materials furnished to develop commercial property owned by appellants, the Reinkes, and leased to the Farmers Market Annex (FMA).

Henry and Marion Reinke, residents of Illinois, own three parcels of commercial property located at Third Avenue North and Lyndale Avenue in downtown Minneapolis. During the spring of 1991, the Reinkes leased the property to FMA for use as a Farmers Market Annex. The lease agreement provided in pertinent part as follows:

> Tenant shall not make any alternations, additions, or improvements to the Property without Landlord's prior written consent * * *.

> * * * Tenant shall give Landlord at least twenty (20) days' prior written notice of the commencement of any work on the Property, regardless of whether Landlord's consent to such work is required. Landlord may elect to record and post notices of non-responsibility on the Property.

After executing the lease agreement, FMA, without giving notice to the Reinkes, contracted with Voss Construction Company,

Inc. (Voss) to construct metal top canopies for use by purveyors of produce during Farmers Market hours. The construction included grading, levelling, paving, and electrical work on two of the parcels.

Voss subcontracted the electrical work to Southside, who commenced work on the project in July 1991 and completed it in October 1991. The work included installation of electrical service, meters, and wiring inside a warehouse located on the premises at an agreed price of $22,610.00 for the labor and materials. Voss subcontracted the grading, leveling, and asphalt paving work to Master Asphalt, who commenced work on the project on August 7, 1991 and completed it on August 26, 1991. The agreed price for the labor and materials expended by Master Asphalt was $21,825.00. Voss subsequently declared bankruptcy and neither subcontractor was paid. This mechanics' lien action ensued.[1]

At trial, the court focused primarily on the question whether notice of non-responsibility was adequately posted at the FMA construction site. Ultimately, the trial court concluded that notice of non-responsibility was not adequately posted, and that determination is not challenged on appeal.[2] It is also undisputed that the construction work performed by respondents constituted permanent improvements to the property. *Knoff Woodwork Co. v. Zotalis*, 213 Minn. 204, 206–07, 6 N.W.2d 264, 265–66 (1942); *Northwestern Lumber & Wrecking Co. v. Parker*, 125 Minn. 107, 112, 145 N.W. 964, 966 (1914).

The enforceability of the mechanics' liens against the landowners therefore depends upon whether the Reinkes had actual knowledge of the improvements to their property. Henry Reinke testified that when he entered into the lease with the owner of FMA, James Bartlett, Bartlett informed him FMA intended to improve the property for use as a Farmers Market Annex. Bartlett apparently showed Reinke preliminary renderings of the intended improvements. Thus, Reinke knew that Bartlett would make improvements on the property, but he did not know when the improvements would be made or who would perform the work. As noted above, the Reinkes were not given notice of commencement of work on the premises as required by the lease, and first learned about the improvements when they received respondents' notices of lien.

Citing *Anderson v. Harrison*, 281 Minn. 95, 160 N.W.2d 560 (1968), the trial court concluded that appellants lacked actual knowledge of the improvements made on their property, and, accordingly, that respondents had no mechanic's lien rights. The court of appeals reversed, holding that the trial court erred in focusing on the notice and knowledge requirements of Minn.Stat. § 514.06 because those requirements are applicable only if the interested party has not authorized improvements on the property. The court of appeals therefore concluded that the Reinkes "authorized" the improvements to their property.

According to the court of appeals, the Reinkes were deemed to have authorized the improvements based on the lease agreement and conversations held with Bartlett regarding FMA's intended use of the property prior to the lease's execution. The court reasoned that the lease's purpose would be frustrated unless the Reinkes had in fact authorized the improvements because the Reinkes knew a Farmer's Market Annex could not be implemented without substantial alteration to the property.

---

1. This case is distinguishable from its companion case, *David–Thomas Cos. v. Voss*, 517 N.W.2d 341 (Minn.App.1994), because here the subcontractors properly recorded their mechanic's lien statements.

2. FMA, the tenant, posted notice in four locations on the property before construction commenced. James Bartlett, owner of FMA, testified that he posted the notice gratuitously to "protect the interest of the property owner, Mr. Reinke and his wife."

At least two of the notices were removed before Master Asphalt and Southside commenced work and testimony elicited at trial indicated that respondents did not see the other notices. The trial court concluded that "[t]he credible evidence shows that a notice of non-responsibility was not posted continuously and conspicuously on either parcel between July 23, 1991 and October 22, 1991."

■ We granted appellants' petition for further review to resolve the question whether general awareness that a tenant contemplates making improvements to the landowner's property constitutes actual knowledge for purposes of Minn.Stat. § 514.06. We believe that it does not, and therefore, reverse.

■ The mechanic's lien statute, Minn. Stat. § 514.06 (1994), provides in pertinent part:

> When improvements are made by one person upon the land of another, all persons interested therein otherwise than as bona fide prior encumbrancers or lienors shall be deemed to have authorized such improvements, in so far as to subject their interests to liens therefor. Any person who has not authorized the same may protect that person's interest from such liens by serving upon the persons doing work or otherwise contributing to such improvement within five days after knowledge thereof, written notice that the improvement is not being made at that person's instance, or by posting like notice, and keeping the same posted, in a conspicuous place on the premises. As against a lessor no lien is given for repairs made by or at the instance of the lessee.

This court long ago determined that, pursuant to the mechanic's lien statute, the property interests of a landowner who has no knowledge of improvements to his or her property cannot be subjected to a lien for those improvements. *Anderson*, 281 Minn. at 98, 160 N.W.2d at 562; *Berglund & Peterson v. Wright*, 148 Minn. 412, 414, 182 N.W. 624, 625 (1921). Indeed, to hold otherwise could result in an unconstitutional taking of property. *Meyer v. Berlandi*, 39 Minn. 438, 446, 40 N.W. 513, 517 (1888).

■ This court has also clearly established that a landowner with actual knowledge that improvements have commenced on his or her property is presumed to have consented to those improvements unless he or she complies with the disclaimer notice requirements of Minn.Stat. § 514.06. *Anderson*, 281 Minn. at 98, 160 N.W.2d at 562; *Congdon v. Cook*, 55 Minn. 1, 6, 56 N.W. 253, 254 (1893) (citing *Wheaton v. Berg*, 50 Minn. 525, 52 N.W. 926 (Minn.1892)).

■ The first issue we must resolve is whether the court of appeals erred in holding that the Reinkes "authorized" the improvements pursuant to Minn.Stat. § 514.06, such that the notice and knowledge requirements of the statute are inapplicable.

In *Wallinder v. Weiss*, 119 Minn. 412, 138 N.W. 417 (1912), plaintiff brought a lien foreclosure action arguing that "since the owners in the lease permitted the alteration to be made by the tenant, they authorized the improvement under [the precursor to Minn. Stat. § 514.06], and hence cannot, by notice, prevent liens from attaching to their interest." *Id.* at 414, 138 N.W. at 417. This court characterized plaintiff's argument as "unsound." *Id.* at 415, 138 N.W. at 417. "We take it that 'authorized' here means authorized by contract with, or by direction, or at the instance of the owner or person interested, and *not merely by his permission or consent at the instance of a tenant or vendee.*" Id. at 416, 138 N.W. at 418 (emphasis added); *see also Berglund*, 148 Minn. at 417, 182 N.W. at 626 ("[t]o authorize [improvements] means something more than merely giving permission to make them. It means an affirmative grant of the right to make them.")

Here, the court of appeals focused on conversations between the Reinkes and FMA, as well as the terms of their lease agreement, to conclude that the Reinkes had authorized the improvements. Lease provisions that merely permit alterations at the tenant's instance, evincing some general notion that improvements may be made by some unidentified contractor, at some unspecified cost, at some time in the future, also unidentified, do not constitute "authorization" of those improvements. Under such circumstances the court must then consider whether the owner had actual knowledge of the improvements.

> Any other holding would work disastrous results to lessors or vendors who in many instances lease or sell with the understanding, express or implied, that the tenant or vendee, to enjoy the interest acquired, must necessarily make improvements or alterations. *Such mere consent ought not irrevocably to subject the interest of the*

*owner to mechanic's liens for work or material performed or furnished at the instance of a lessee or vendee.*

*Wallinder,* 119 Minn. at 416, 138 N.W. at 418 (emphasis added). Accordingly, we conclude that the court of appeals erred in holding that the Reinkes authorized the improvements within the meaning of Minn.Stat. § 514.06.

The question remains whether the Reinkes nonetheless had sufficient knowledge of the improvements to require compliance with the notice requirements of Minn.Stat. § 514.06.

■ First, we reject respondent Southside's argument that because the Reinkes sought to rely on the notice posted by FMA at trial, they necessarily deemed FMA their agent such that FMA's knowledge of the improvements is imputed to the Reinkes. "A lessee is not generally considered the agent of the lessor within the contemplation of the mechanic's lien statutes merely by virtue of the relation of landlord and tenant. Nor is an agency relationship created merely by the consent of the lessor to the making of alterations and improvements upon the leased premises." 53 Am.Jur.2d *Mechanics' Liens* § 132 (1970) (footnote omitted). Further, even if some sort of agency relationship for posting notice could be deemed to spring from the notice posting effort by FMA, it hardly renders FMA the Reinke's agent for purposes of imputing knowledge of the improvements. *See Sandberg v. Palm,* 53 Minn. 252, 256–57, 54 N.W. 1109, 1110 (1893). The lease agreement between the Reinkes and FMA explicitly provided that FMA was not authorized to commence improvements on the property without first informing the Reinkes, in writing, of its intent to do so. We conclude that FMA was not the agent of the Reinkes for purposes of the knowledge and notice requirements of Minn.Stat. § 514.06.

Next, we turn to the pivotal issue on this appeal: whether a landowner's general awareness that its tenant contemplates making improvements to the property constitutes "actual knowledge" of those improvements for purposes of Minn.Stat. § 514.06.

In *Anderson v. Harrison,* 281 Minn. 95, 98, 160 N.W.2d 560, 562 (1968), we held that the legislature, in enacting Minn.Stat. § 514.06, "[c]learly * * * intended to authorize a lien on [an owner's] interest only if [the owner] had actual knowledge and remained mute." Our concern was whether "the owner had sufficient information to know that he or she needed to protect an interest in the property by filing a disclaimer notice." *Korsunsky Krank Erickson Architects, Inc. v. Walsh,* 370 N.W.2d 29, 32–33 (Minn.1985).

■ Minn.Stat. § 514.06 does not, by its plain language, require interested parties to post notice of non-responsibility after learning that improvements are merely contemplated. *See* Minn.Stat. § 514.06 (1994); 53 Am.Jur.2d *Mechanics' Liens* § 162 (1970). While a property owner may effectively post notice pursuant to Minn.Stat. § 514.06 before improvements have actually commenced, we have not required a property owner to do so. *See Bond Elec. Co. v. Mill City Plastics, Inc.,* 257 Minn. 544, 548, 102 N.W.2d 281, 284 (1960).

Previously when the court has concluded that a landowner had actual knowledge of improvements to his or her property, the landowner had actual knowledge that the improvements were underway. *See, e.g., Bruer Lumber Co. v. Kenyon,* 166 Minn. 357, 359, 208 N.W. 10, 11 (1926); *Henning v. McAdam,* 155 Minn. 194, 197–98, 193 N.W. 124, 125 (1923); *Wheaton,* 50 Minn. at 530–31, 52 N.W. at 927.[3]

---

3. Respondents rely on language from *Congdon* to support their argument that the lease agreement between the Reinkes and FMA creates actual knowledge of the improvements sufficient to subject the Reinkes interests to a lien:

[t]he legal basis of the lien as against the owner is his consent to an improvement presumably beneficial to the property. He is directly interested in improvements which, in the case of ground leases such as this, are contem-

plated thereby; for, without them, the leased premises would be comparatively unproductive, and the rent could not be earned. The evidence justified the court in finding that the plaintiff had seasonable knowledge of the improvement * * *.

*Congdon,* 55 Minn. at 7, 56 N.W. at 254. Certainly, inferences from a lease alone may create actual knowledge if the lease agreement's terms are sufficiently specific. *See Wallinder,* 119

The actual knowledge requirement of Minn.Stat. § 514.06 (1994)—in the sense of a landowner possessing sufficient information to justify the burden of posting notice to avoid attachment of a lien—requires more than general awareness on the part of the landowner that improvements to the property are contemplated by the tenant. We conclude that there was sufficient evidence for the trial court to conclude that the Reinkes lacked actual knowledge of the improvements to their property sufficient to meet the requirements of Minn.Stat. § 514.06.

Finally, we reject Southside's argument that our holding effectively repeals by implication the pre-lien notice statute, Minn. Stat. § 514.011, subd. 4c (1994),[4] because it may require subcontractors to provide pre-lien notice to property owners such as the Reinkes in order to protect their lien rights. The property involved in this action is exempt from the pre-lien notice requirements pursuant to Minn.Stat. § 514.011, subd. 4c.

> Section 514.011 was intended to protect homeowners and small businessmen who out of ignorance might be forced to pay first the contractor and then the subcontractor. Subdivision 4 in relevant part was the legislature's designation of larger businessmen who do not require such protection.

*Polivka Logan Designers, Inc. v. Ende,* 312 Minn. 171, 174, 251 N.W.2d 851, 853 (1977); *see also Nasseff v. Schoenecker,* 312 Minn. 485, 253 N.W.2d 374 (1977). The exemptions to Minn.Stat. § 514.011 reflect the legislature's determination that larger business enterprises do not need the affirmative protection of pre-lien notice requirements. While subcontractors may opt to provide pre-lien notice to property owners otherwise exempted from the requirements of Minn.Stat. § 514.011, this result does not interfere with the legislative purpose of Minn.Stat. § 514.011, which is to protect small property owners by ensuring that they receive notice of improvements to their property. Accordingly, the decision of the court of appeals is reversed.

Reversed.

ANDERSON, J., took no part in the consideration or decision in this case.

---

Minn. at 415–16, 138 N.W. at 417, 418. That is not the case here. Nor does it appear that the leased premises, located in the heart of downtown Minneapolis, would necessarily be "unproductive" if the improvements at issue were not made.

4. Minn.Stat. § 514.011, subd. 4c (1994) provides: The notice required by this section shall not be required to be given in connection with an improvement to real property which is not in agricultural use and which is wholly or partially nonresidential in use if the work or improvement:

  (a) is to provide or add more than 5,000 total usable square feet of floor space; or

  (b) is an improvement to real property where the existing property contains more than 5,000 total usable square feet of floor space; or

  (c) is an improvement to real property which contains more than 5,000 square feet and does not involve the construction of a new building or an addition to or the improvement of an existing building.

We also reject Southside's argument that because Minn.Stat. § 514.011 imposes no affirmative duty upon subcontractors to provide notice of improvements to property owners like the Reinkes, it is immaterial whether the property owner has knowledge of the improvements. On the contrary, Minn.Stat. § 514.06, and long standing case law deriving in part from due process considerations, explicitly impose a knowledge requirement upon property owners. *See, e.g., Meyer v. Berlandi,* 39 Minn. 438, 40 N.W. 513 (1888).