## PIRTLE et al. v. BROWN et al.

No. 17929. Opinion Filed Oct. 2, 1928.

Refiled Feb. 11, 1930.

Commissioners' Opinion, Division No. 1.

G. A. Chappell and J. H. Hill, for plaintiffs in error.

Sam K. Sullivan, Neal A. Sullivan, and R. J. Shive, for defendants in error.

FOSTER, C. This is an action to foreclose mechanics' liens, and involves a con-

tract made and entered into on the 6th day of January, 1925, between Grace Pirtle and J. S. Hayes, as parties of the first part, and C. N. Atkinson, for himself individually and as trustee, party of the second part.

By the terms of said contract, the first parties agreed to sell to the second party certain described real estate located near Newkirk, Okla., on which was situated a refinery, together with the buildings, machinery, materials and chattels constituting said refinery, said property to be transferred to the second party upon the payment of $75,000, to be paid in month'y installments of not less than $3,000 per month, the first installment to be due and owing on the 1st day of February, 1925. The installments were to be increased in proportion to the amount of oil refined, it being specifically agreed by the terms of the contract that, in case of a default in the payment of any of the sums as specified herein, the contract should be null and void and the parties of the first part should immediately have possession of the property and all payments made should be construed as liquidated damages.

The contract further provided that the second party should have no right to incumber said property in any way or to charge the same with liens, and should keep all the taxes paid and keep the property duly insured.

Upon the execution of the contract, the party of the second part was placed in charge of the refinery and contracted for the work and material for which liens are sought.

It appears from the testimony that a corporation was formed soon after the execution of the contract, or perhaps was in the process of organization at the time the contract was entered into. This corporation was known as the Newkirk Refining Company, and C. N. Atkinson, above mentioned, was its president. It further appears that this corporation really took charge of the refinery, and the contract was in truth and in fact made for the benefit of this company. While the facts are somewhat disputed, the court found that the parties of the first part knew that the Newkirk Refining Company was going to have charge of the refinery, and that the contract was made for the benefit of the Newkirk Refining Company at the time of its execution. We believe there is sufficient evidence in the record to justify the court in so finding, and it will hereafterwards be considered that the contract was

made originally for the benefit of the Newkirk Refining Company as a party of the second part.

The Newkirk Refining Company, through its agents and representatives, employed S. L. Brown and many others, who are the defendants in error in this case, to perform labor and furnish material in repairing the refinery. The labor performed and material furnished was principal.y in laying additional pipe lines and repairing some of the old ones, cleaning out the refinery, painting, giving it a general overhauling, and putting it in condition so it could be operated.

The contract above referred to was filed for record in Kay county on the 13th day of January, 1925. S. L. Brown, one of the claimants, furnished certain material beginning on the 10th day of January, but most of the labor was performed and material furnished after the recording of the contract as above set out.

None of the payments as listed in the contract of sale were ever paid, and after considerable work and labor was performed and material furnished by the different claimants, C. N. Atkinson, president of the Newkirk Refining Company, and party of the second part in the contract above referred to, gave up the property, turned possession over to the parties of the first part, and S. L. Brown and the other defendants in error filed their suits for judgment against the refining company and to foreclose mechanics' liens which they had filed on the property covered by the sale contract.

The evidence discloses that Pirtle and Hayes knew of the improvements being made on the property. and had assisted some of the claimants in getting contracts with the Newkirk Refining Company. Hayes was the treasurer of the new company, but took no active interest in its management. Neither Pirtle nor Hayes contracted with the claimants, and their petitions and cross-petitions do not seek a personal judgment against either.

The Newkirk Refining Company defaulted and a judgment was granted in favor of S. L. Brown and the other claimants on their petitions and cross-petitions for the full amount against the said Newkirk Refining Company, and a lien was granted in their favor against the refinery, which consisted of all the buildings, machinery, pipe lines, and all personal property located upon the real estate, but no lien was granted against the real estate; and from this judgment granting a lien against the refinery, consist-

ing of the machinery, buildings, etc., located upon the real estate, Grace Pirtle and J. S. Hayes appeal.

The plaintiff in the lower court, together with the cross-petitioners, all of whom are claiming liens, will be referred to herein as the plaintiffs; and Grace Pirtle and J. S. Hayes, plaintiffs in error here, will be referred to as the defendants.

There are several assignments of error, but both parties agree that there is but one proposition of law to be determined, namely, whether or not the claimants, under the facts and circumstances as above set out, having furnished material and performed labor as alleged in their petitions and cross-petitions, are entitled to a lien upon the buildings, refinery and other appurtenances located upon the real estate involved in this action.

Proper answer to this question, which we agree is the only one to be determined, involves an interpretation of the lien statutes of the state of Oklahoma, and especially section 7461, C. O. S. 1921, which is as follows:

"Any person who shall, under oral or written contract with the owner of any tract or piece of land, perform labor, or furnish material for the erection, alteration or repair of any building, improvement, or structure thereon, (or who shall furnish material) or perform labor in putting up any fixtures, machinery in, or attachment to, any such building, structure or improvements, * * * shall have a lien upon the whole of said tract or piece of land, the buildings and appurtenances. If the title to the land is not in the person with whom such contract was made (but is leased and unimproved), the lien shall be allowed on the buildings and improvements on such land separately from the real estate: (Provided, however, that where the person making such improvements or causing same to be made, holds a contract for title to real estate with the person in whom record title to said real estate rests, no lien shall attach to either the land or the improvements without the written consent of the person in whom said record title is vested, and no court shall hereafter have jurisdiction to hear and determine any suit to foreclose such a lien unless such assent or a certified copy of the same is attached to petition to foreclose.) * * *"

This statute was amended by the Session Laws 1923 (c. 54), and the parts which we have placed in parenthesis were left out of the 1923 amendment. So the statute, as it now exists and as it existed at the time the labor was performed and material furnished in this case, reads as the above quoted section

would read leaving out the portions in parenthesis.

Prior to 1919, section 7461, C. O. S. 1921, did not contain the provisions in parenthesis in the section as above quoted, in which it is provided that any person making improvements upon land on which he holds a contract for the title to the same must have the written consent of the person in whom the record title is vested; the statute at that time being as follows:

"If the title to the land is not in the person with whom such contract was made, **but is leased and unimproved,** the lien shall be allowed upon the buildings and improvements on said land separately from the real estate." Rev. Laws 1910, sec. 3862.

It will be observed that the Act of 1923 omitted the words, "but is leased and unimproved."

It is now the contention of the plaintiffs that, since this clause was left out of the 1923 Act, whenever any person is in possession of real estate under a contract of sale and contracts with laborers and materialmen for the construction, repair or alteration of the buildings or other improvements located on the property, whether the title to the land and the improvements is in such person or not, the lien will be allowed upon the improvements separate from the real estate, and apparently this is the theory upon which the trial court granted a lien in this case.

Under the provisions of sections 7461 and 7462, C. O. S. 1921, and under the provisions of said statute before it was amended in 1919, it was essential, in order to establish a lien, that a contract with the owner must be alleged and proven. This seems to be the unanimous holding of our court as well as many other courts. Lee v. Tonsor, 62 Okla. 14, 161 Pac. 804; Gentry-Bowers Lbr. Co. v. Hamill, 75 Okla. 210, 182 Pac. 687; Mobley v. Leeper Bros. Lbr. Co., 89 Okla. 95, 214 Pac. 174; Stewart Lbr. Co. v. Derry, 122 Okla. 208, 253 Pac. 485; Pruitt v. Lail, 116 Okla. 184, 243 Pac. 927.

Although the material and labor may have been furnished with the knowledge of the owner, it is not sufficient to establish a lien upon the owner's interest, although made with one in possession under a contract of sale. Gentry-Bowers Lbr. Co. v. Hamill, supra; Antrim Lbr. Co. v. Mendlik, 110 Okla. 76; 236 Pac. 422; Hoggson Bros. v. Dickason-Goodman Lbr. Co., 81 Okla. 31, 196 Pac. 686.

In the two last cases above cited, the per-

son in possession with whom the contract for the labor and material was made was under a lease contract with the owner, and in the last case there was a provision in the contract which clearly contemplated that the lessee should make improvements upon the land at his own expense, and it is held that even under that state of facts no lien attached against the owner's interest, but only upon the improvements so constructed.

It has also been held that laborers and materialmen, under a contract with a person in possession who has an executory contract to purchase, have a lien only upon the equitable interest of the vendee, including the buildings and improvements constructed by the laborers and materialmen. Thomas v. Soper, 69 Okla. 197, 171 Pac. 736; Long-Bell Lbr. Co. v. Prowant, 114 Okla. 35, 243 Pac. 165; Horse Shoe Mining Co. v. Red Rose, 104 Okla. 45, 230 Pac. 492.

From an examination of all the cases above cited and others, all of which were decided at least prior to the passage of the 1923 amendment, it appears that in order to obtain a lien under section 7461, supra, the laborer or materialman must have a contract with the owner, and by the owner is meant any one who has either a legal or an equitable interest in the property under a deed, a contract for sale or a lease; that where the contract is made with one under an executory contract for sale, the lien upon the equitable interest of the person in possession, and where improvements or buildings are placed upon the property under a contract with such persons, the laborer and materialman have a lien only upon such buildings and improvements so constructed separate from the real estate.

In the case at bar, an executory contract of sale was entered into and the vendee immediately entered possession of the property. The contract clearly shows, however, that the title to the improvements on the property, as well as to the real estate itself, was in the name of the defendants Grace Pirtle and J. S. Hayes, and that they retained title to the same and no part of the consideration had been paid. The property was improved at the time the contract was entered into, and the improvements made by the plaintiffs were not separable from the improvements already on said land.

Under the facts in this case, it seems clear that prior to the Session Laws 1923, no lien could have attached to the improvements because at that time the law provided that where a contract was made with a person not holding title to the land, in order for a lien to be established, the land must be leased and unimproved. In the case at bar, of course the land was improved at the time the material was furnished and labor performed. We are therefore confronted with the proposition of what the Legislature meant when it inserted the following clause:

"If the title to the land is not in the person with whom such contract is made, * * * the lien shall be allowed on the buildings and improvements * * * separately from the real estate."

What person could the Legislature have intended in using this clause? Did it mean a person who was not in possession of the real estate at all, and had no right whatever in said real estate? We think clearly that it did not. It must at least be some one who is in possession of the land. Could it be contended that the party who had leased his property for a very short period of time, with the specific clause in the lease contract that the premises should in no way be incumbered by a lien or otherwise, could be held liable for a lien placed upon his premises by the person in possession under such a lease? We think clearly that he would not.

By inserting the clause as above set out, the Legislature must have intended that the contract be with some person who had some interest in the buildings or improvements so constructed upon the land, although he had no interest in the land itself.

Keeping in mind the well-established doctrine that a lien is purely a creature of the statutes, we are confronted with the proposition that in the first part of section 7461, the very basis of a lien is a contract with the owner. In other words, no lien can be created under our law without a contract with the owner, either legal or equitable, of the property upon which the lien is to be established. So the Legislature, when it provided that, "If the title to the land is not in the person with whom such contract is made, * * * the lien shall be allowed on the buildings and improvements * * * separately from the real estate," it intended that such person should be the owner or have an interest in said buildings and improvements. In the case at bar, the evidence shows that the Newkirk Refining Company had no greater interest in the improvements and the buildings than in the land itself. In other words, the interest in both the land and improvements must be determined by the contract of sale, and its undisputed possession and control of the land and improvements.

This brings us to the question of what is an owner under our statute. Plaintiffs in this case cite 27 Cyc. 52, in which the term "owner" is defined, but we cannot see how this citation supports the plaintiffs' contention. Among other provisions, this citation says:

"The term 'owner,' as used in mechanic's lien statutes, does not mean the absolute owner, but merely the owner of an estate or interest which the court may order sold. But the person making the contract must have some kind of ownership, although neither possession of, nor legal title to, land upon which a mechanic's lien is claimed is necessarily conclusive of the right to a lien upon such land, or upon a structure which has been constructed thereon."

From the above quotation, which is relied upon by the defendants, it appears to us that there must be something owned by the Newkirk Refining Company in this case which could be sold.

In 40 C. J. p. 93, section 78, the following language is used:

"An owner, within the meaning of such statutes (mechanic's lien statutes) is a person who has any estate or interest in the property which is assignable, transferable, or conveyable, and which the court may order sold."

It has been held that a person in possession of real estate, although they had no actual interest therein, could contract for material to be furnished in improving said real estate or for labor to be performed thereon, and that the same would become a lien upon the interest which he thereafterwards acquired, but this is based upon the theory that the interest acquired dates back to the time of the furnishing of the material or the performance of the labor. Plaintiffs cite no case, and we have been unable to find any which goes so far as to hold that a lien attaches to an interest that is admittedly not owned by the person making the contract, or that the person making the contract does not afterwards acquire, and especially is this true where the record discloses that the person in possession has by written contract agreed that no lien shall be placed upon the property.

It is contended by the defendants that the evidence in this case does not show that the labor and material furnished was lienable, nor is there sufficient evidence to show that the material was furnished upon the premises upon which a lien is sought. DeBolt v. Farmers Exchange Bank. 51 Okla. 12, 151 Pac. 686. We do not believe that this contention is good. Under the numerous decisions of this court, work performed and material furnished of the nature as is shown by the evidence in this case is lienable, and we believe the evidence is sufficient to show that the material was furnished and the labor performed upon the premises upon which a lien is sought.

It is also the contention of the plaintiffs that they are entitled to a lien for the labor performed under section 7468, C. O. S. 1921, which provides, in substance, that a laborer shall have a lien upon the production of his labor, and section 7472, C. O. S. 1921, provides that it shall take precedence over all other liens, whether prior or subsequent, if the action is begun within eight months after the labor is furnished. We cannot agree that these sections apply. Under the facts in this case, the machinery, buildings, and the refinery on which the labor was performed and the material furnished, were not of such a nature as could be held to be the production of their labor. The improvement and repair was upon buildings, machinery, etc., which already existed.

The plaintiffs next contend that when an owner permits another to hold himself out as being the owner of his property, he is estopped from denying a lien for labor and material furnished under a contract with said person on the theory of estoppel.

In the case of Osage Oil & Refining Co. v. Gormley, supra, as well as other Oklahoma authorities, it was held that, a person being in possession of personal property, exercising control over it, and making contracts as though he were the owner, and being permitted to do so by the true owner thereof, the true owner was estopped from denying that the person in possession was the true owner of the same. But these decisions are based upon the proposition that no notice was given to the materialmen or laborers as to who the true owner was, and that the possession of the property contemplated that certain labor or material was necessary in order to carry out the purpose for which the party had possession of the property.

In distinction, the record in the case at bar disclosed that the Newkirk Refining Company, although in undisputed possession of the property and controlling it as its own, only had a contract of sale, and at the time some of the work was performed this contract was not of record, the legal title being entirely in the name of the defendants. Laborers and materialmen therefore had at least constructive notice of what interest the

232

defendants had in the land and buildings and improvements thereon.

The cases of Stark v. Petty Bros. (Ky.) 243 S. W. 50, and Johnson v. Schimpf (Cal.) 239 Pac. 401, are cited as authority that the rule of 'estoppel should apply in this case, because in those cases liens were allowed as the owner permitted other persons to occupy the premises as though they owned the same. Even if this were the rule in Oklahoma, and we do not believe it is, it could not apply in the case at bar, because, under the estoppel doctrine, the plaintiff in this case would be entitled to a lien upon the real estate as well as the buildings and improvements located thereon. The trial court refused a lien upon the land, but granted it upon the buildings and improvements, thereby holding that the doctrine of estoppel could not apply. We believe that under the facts in this case the court was right in so holding, as there is sufficient evidence to justify his finding.

In the case of Okmulgee Plumbing Co. v. Comstock, 125 Okla. 245, 257 Pac. 320, the owner of real estate, one Comstock, sold the property to Manning at the agreed price of $600, but placed the deed in escrow to be delivered to Manning upon the payment of the full amount; the record title remaining in Comstock. Manning immediately took possession of the property under this contract, and purchased lumber from one Ketcham to build a house on the property, but before Ketcham furnished the lumber he secured an agreement from Comstock that a lien for the lumber furnished would be superior to his lien for the purchase price. Manning employed other workmen and materialmen to furnish labor and material for the construction of the house, without any agreement from Comstock as to the priority of liens. In a suit to foreclose the liens for the lumber and the other labor and material furnished, the court held that Ketcham was entitled to a first lien, and that Comstock was entitled to a second lien for the purchase price agreed to be paid, and the other laborers and materialmen a lien inferior to Comstock.

The section of the statute relied upon in this case, to wit, section 7461, C. O. S. 1921, as amended by the 1923 Session Laws, was cited and discussed by the court, and, in discussing said statute, the court used the following language:

"It is equally clear, we think, that the owner was entitled to a lien upon the lot and buildings to the extent of the unpaid purchase price, * * * and the other lien claimants, who furnished material and labor which went into the building without any contract, oral or written, with the owner of the lots, were entitled to a lien upon the property subject to the lien of the plaintiff and the lien of the owner, to the extent of the purchase price."

Further on in the opinion, the court uses the following language:

"While the plaintiffs in error were entitled to a lien upon the buildings separate from the real estate by virtue of their contract with the person in possession of the piece of land, under an executory contract to purchase the same, still before the legal interest of the owner, Comstock, could be bound by the liens of the codefendants, there must be an enforceable legal contract with the owner sought to be charged with the lien."

In that case, the court holds that the unpaid purchase price of the vendor under his executory contract of sale, is a lien upon the land and improvements superior to the lien of laborers and materialmen, who have a contract only with the vendee who is in possession; and holds that the lien of said vendor goes to all the improvements, although they were entirely constructed upon the land after the vendee took possession. That case is in principle directly in point.

It seems to us a much stronger case than the case at bar. Here, the improvements already existed upon the land and the work performed and material furnished were for the repair of the buildings and improvements. In principle, it appears to us that the case was identical, the only distinction being that in the case at bar the vendors are not asking for a lien, but are claiming to own the property outright, while in the case last cited the vendors claim a lien for the amount of the purchase price.

Only the interest of the vendee under an executory contract can be subject to a lien, and it is clear in the case at bar that the vendee did not own the buildings, improvements and machinery, etc., on which the lien was established. Even though no money was paid under the executory contract for purchase in this case, if the vendee (in this case, Newkirk Refining Company) had any interest in the property, it would be subject to a lien.

From the record in this case, it appears that the property was perhaps not worth any more than the $75,000 provided for in the executory contract of sale. The plaintiffs in this case, undoubtedly, would have a lien on the entire property subject to the

defendants' lien under their contract of sale.

It therefore follows that this cause should be and is hereby reversed and remanded to the trial court, with directions to set aside the lien against the improvements, machinery, buildings, etc., granted in this case, and for such further proceedings as may be necessary not inconsistent with the views herein expressed.

BENNETT, TEEHEE, LEACH, and REID, Commissioners, concur.

By the Court: It is so ordered.

Note.—See 40 C. J. p. 93, §78; p. 111, §110; anno. 2 A. L. R. 797; 18 R. C. L. p. 886; 3 R. C. L. Supp. p. 869; 4 R. C. L. Supp. p. 1224; 7 R. C. L. Supp. p. 613. See "Mechanics' Liens," 40 C. J. §350, p. 280, n. 74.