Archie McINNES and Joe H. Britten, Plaintiffs in Error,

v.

T. J. ROBINSON and Joe Marshall, co-partners dba Robinson-Marshall Drilling Co., Halliburton Oil Well Cementing Co., a corporation, and Lillard Pipe & Supply, a co-partnership composed of Rufus Lillard and Thomas M. Lillard, Defendants in Error.

No. 38132.

Supreme Court of Oklahoma.
June 2, 1959.

As Corrected July 20, 1959.

Rehearing Denied July 21, 1959.

**578**

Charles Hill Johns, Gomer Smith, Jr., Anita Ellerbee, Lowell Clifton, Oklahoma City, for plaintiffs in error.

Abernathy & Abernathy, Shawnee, for defendant in error Robinson-Marshall Drilling Co.

Spurr & Steed, Shawnee, for defendant in error Lillard Pipe & Supply. Young, Young & Young, Sapulpa, for defendant in error Halliburton Oil Well Cementing Co.

BERRY, Justice.

On April 28, 1939, Nancy Wright leased the N/2 of NE/4 (hereafter referred to as "North 80"), and NE/4 of SE/4, and SE/4 of NW/4 of SE/4 (hereafter referred to as "South 50"), Sec. 17, T. 17N, R.8E, Creek County, Oklahoma, for oil and gas purposes to Tom C. Greer and J. O. Tilley, which lease remained in force and effect throughout the period of time here involved.

It appears that Archie McInnes, one of the plaintiffs in error, hereafter referred to as "McInnes", first obtained an assignment to the lease in controversy in 1942. In view of the fact that the other plaintiff in error, Joe H. Britten, hereafter referred to as "Britten", in said year joined with McInnes in mortgaging the leasehold estate and in making a partial assignment thereto in order to secure an indebtedness, it must be assumed that Britten, in 1942, also acquired an interest in the lease under the assignment to McInnes. When referred to collectively herein, McInnes and Britten will be referred to as "plaintiffs in error".

On June 29, 1950, McInnes assigned the lease in so far as it covered the North 80 to Floyd D. Williams, which assignment was recorded July 17, 1950. On said June 29, 1950, Williams reassigned the lease in so far as it covered said North 80 to Texinia Corporation, Howard E.

Hodge and R. M. Sims. This assignment was filed of record June 30, 1950. The record of the County Clerk of Creek County showed that from July 17, 1950 on, neither McInnes nor Britten owned an interest in the lease in so far as it covered the North 80. On September 27, 1955, Texinia Corporation, Hodge and Sims assigned the lease in so far as it covered the North 80 to Rumley Oil, Inc., hereafter referred to as "Rumley", and F. W. Cooper, hereafter referred to as "Cooper", who were defendants in this action. This assignment was recorded November 5, 1955.

On November 10, 1955, McInnes and Britten made a partial assignment of the lease in so far as same covered the South 50 to Rumley and Cooper. This partial assignment, which was recorded March 15, 1956, reads in part as follows:

"The assignors hereby except herefrom and reserve unto themselves, their heirs, personal representatives and assigns, all right, title and interest in said above described lease, insofar as the same cover and pertain to the Prue sand zone and all wells producing thereon from said sand zone and all equipment on said leased premises in connection with said producing wells from said sand zone, together with the right of Assignors to operate said producing wells.

"This assignment is made subject to the balance of the oil payments due to J. L. Kohler and Archie McInnes.

"The Assignors further reserve unto themselves, their heirs, person representatives and assigns an overriding royalty interest of an undivided ⅟₁₆th of ⅞ths of all oil, gas, * * *."

Several years prior to 1955, three wells were drilled on the South 50 to the Prue sand and it appears that plaintiffs in error began producing said wells in 1942. None of the services performed or equipment furnished in connection with which defendants in error assert liens was performed or furnished in connection with said wells or Prue sand.

The record develops that during the period that Rumley and Cooper were negotiating for an assignment of the lease in so far as it covered the South 50, and prior to said assignments being made, they (Rumley and Cooper) began development operations on the North 80.

Between August 13, 1955, and August 20, 1955, Halliburton Oil Well Cementing Company, one of the defendants in error, hereafter referred to as "Halliburton", at the request of Cooper furnished services and supplies in connection with a well located on the North 80 which was identified as "Wright No. 1". This was an old well that Rumley and Cooper attempted to recondition. The lease in so far as same covered the North 80 was, as heretofore pointed out, then owned by Rumley and Cooper and plaintiffs in error owned no right, title or interest therein. Between October 12, 1955, and October 26, 1955, Halliburton, at the request of Cooper, furnished services and supplies in connection with a test well identified as "Wright No. 1-A", which Rumley and Cooper caused to be drilled to the Jones sand on the South 50. Between October 29, 1955 and January 5, 1956, Halliburton, at the request of Cooper, also furnished services and supplies in connection with a test well identified as "Wright No. 2-A", which Rumley and Cooper caused to be drilled on the South 50.

Between October 21, 1955 and October 25, 1955, Lillard Pipe & Supply, a partnership composed of Rufus Lillard and Thomas M. Lillard, one of the defendants in error, hereafter referred to as "Lillard", at the request of Cooper, furnished supplies which were used in equipping the reconditioned Wright No. 1 well on the North 80. Between November 7, 1955 and December 6, 1955, Lillard, at the request of Cooper furnished additional supplies which were used in equipping test wells that Rumley and Cooper caused to be drilled on the South 50.

On January 4, 1956, Rumley and Cooper entered into a contract in writing with T. J. Robinson & Marshall, co-partners, do-

ing business as Robinson-Marshall Drilling Co., hereafter referred to as "Robinson & Marshall", to drill a test well to the Wilcox sand on the South 50, which well was subsequently drilled between January 10, 1956 and January 18, 1956.

Halliburton, Lillard and Robinson & Marshall each timely asserted liens under 42 O.S.1951 § 144, on the 130-acre leasehold estate, and in this action sought to foreclose said liens against said leasehold estate. No one sought a money judgment against the plaintiffs in error.

Following a rather extended hearing, the liens so asserted by the defendants in error were allowed by the trial court against the entire leasehold estate and foreclosure of said liens was ordered. The liens were allowed and foreclosure of same was therefore ordered against the wells that had been drilled to the Prue sand on the South 50 and also the Prue sand underlying said South 50. Plaintiffs in error filed a motion for new trial and from order denying said motion for new trial perfected this appeal.

The fact that other parties also asserted liens against the 130-acre leasehold estate is not deemed of significance in view of the fact that said liens were not allowed as to the wells drilled to the Prue sand or said sand.

Plaintiffs in error only contend here that the trial court erred in impressing the liens asserted by defendants in error on the Prue sand wells drilled on the South 50 and upon the Prue sand underlying said 50, and in ordering a foreclosure of said liens as to said wells and sand. They, therefore, do not claim that the trial court erred in fixing a lien on their reserved interest in other portions of the leasehold estate covering the South 50. Plaintiffs in error's claim to error is based upon the proposition that the right to assert a lien under Sec. 144, supra, depends upon either an express or an implied contract with the owner of the property in connection with which a lien is asserted, or the services rendered or supplies furnished must have enured to the benefit of property in connection with which a lien is asserted, and assert that neither condition existed in the instant case.

The defendants in error contend (a) "Where an owner of an interest in oil and gas rights conveyed by a lease assigns and transfers his interest to another for the purpose of operating the lease, for a part of the production, his rights retained may be subjected to statutory liens"; that (b) Rumley and Cooper acted as plaintiffs in error's agent; that (c) plaintiffs in error are estopped to deny that Rumley and Cooper were their agents; that (d) plaintiffs in error benefited; that (e) plaintiffs in error "ratified the leasehold development by claiming and recording their benefits thereunder with full knowledge of the facts."

In their briefs the parties discuss at considerable length the proposition of whether the original 130-acre lease represented one or more than one lease at the time the asserted liens in controversy arose. Plaintiffs in error contend that the assignment of November 10, 1955, constituted a sublease from McInnes and Britten of the interest assigned to Rumley and Cooper and created "an entirely new and separate leasehold estate"; the defendants in error contend that there was but one lease. We are of the opinion that it is unnecessary to specifically decide this issue in order to reach a decision herein.

The statute in controversy (Sec. 144, supra,) reads in part as follows:

"§ 144. Any person, corporation or copartnership who shall, under contract, expressed or implied, with the owner of any lease-hold for oil and gas purposes, or the owner of any gas pipe line or oil pipe line, or with the trustee or agent of such owner, perform labor or furnish material, machinery and oil well supplies * * *, shall have a lien upon the whole of such lease-hold * * *, and upon the oil or gas well for which they were furnished, and upon all the other oil

or gas wells, fixtures and appliances used in the operating for oil and gas purposes upon the lease-hold for which said material and supplies were furnished or labor performed * * *."

■ The language of the cited statute clearly supports plaintiffs in error's major premise to the effect that a vendor or laborer can only acquire a lien under said statute where he has a "contract, expressed or implied, with the owner of any leasehold." In Pirtle v. Brown, 141 Okl. 227, 284 P. 898, we had occasion to pass upon a very similar contention made in connection with a mechanic's lien asserted under 42 O.S.1951 § 141. It is provided in the last-cited statute that "Any person who shall, under oral or written contract with the owner of any tract or piece of land, perform labor, or furnish material" shall have a lien on the land, etc. It is apparent that the language of Sec. 144, supra, that plaintiffs in error rely upon, is in substance the same as the language of Sec. 141, supra, last above quoted. In the above cited case, we held that "in order to establish a lien, that a contract with the owner must be alleged and proved." [141 Okl. 227, 284 P. 899.] In elaborating upon the quoted legal principle, we had this to say at 284 P. at page 900:

"Keeping in mind the well-established doctrine that a lien is purely a creature of the statutes, we are confronted with the proposition that in the first part of section 7461 the very basis of a lien is a contract with the owner. In other words, no lien can be created under our law without a contract with the owner, either legal or equitable, of the property upon which the lien is to be established. * * *.

"* * * In 40 C.J. p. 93, § 78, following language is used:

"'An owner, within the meaning of such statutes (mechanic's lien statutes) is a person who has any estate or interest in the property which is assignable, transferable, or conveyable and which the court may order sold.'

"It has been held that a person in possession of real estate, although they had no actual interest therein, could contract for material to be furnished in improving said real estate or for labor to be performed thereon, and that the same would become a lien upon the interest which he thereafterwards acquired; but this is based upon the theory that the interest acquired dates back to the time of the furnishing of the material or the performance of the labor. Defendants cite no case, and we have been unable to find any, which goes so far as to hold that a lien attaches to an interest that is admittedly not owned by the person making the contract, or that the person making the contract does not afterwards acquire. * * *."

Defendants in error contend that the above cited Pirtle case can be distinguished from the instant case on the grounds that we stated in Arkansas Fuel Oil Co. v. McDowell, 119 Okl. 77, 249 P. 717, 721, that "There is no analogy between the mechanic's lien law and the statutes governing liens upon oil and gas wells." The quoted statement is followed by language to the effect that under the mechanic's lien statute a lien may be only imposed upon "land, the buildings and appurtenances" but under the oil and gas well lien statute a lien may be imposed not only upon the leasehold, the buildings and appurtenances but also upon "appliances used in the operating for oil and gas purposes". A lack of analogy between the referred-to statutes in the foregoing particulars clearly does not establish that there is no analogy between the portions of the statutes to the effect that a lien may not be imposed in the absence of an express or implied contract with the owner of that upon which a lien is asserted.

In Garber & Pulse, Inc., v. Gloyd, 168 Okl. 88, 90, 31 P.2d 947, 949, a lien was claimed on drilling equipment used in drilling a test well for oil, which equipment was owned by a person who did not have an interest in the leasehold estate. In reject-

ing the asserted right to a lien on the drilling equipment we stated that:

"* * * We are of the opinion that a person who takes his drilling equipment or borrowed equipment upon the lease of another for the purpose only of drilling a well thereon, and the owner of the lease does not acquire any interest in the title thereto, does not thereby subject his property to the lien claims of third person creditors of the lease owner. It is the intention of the law to create a lien upon the property of the contracting lease owner, in favor of those having claims against the contracting lease owner. * * *"

We held in Kissinger v. G. E. Burgher Oil & Gas Co., 174 Okl. 49, 49 P.2d 1049, that the fact that a drilling contractor was to be paid a certain amount per foot for use of his drilling equipment in drilling a test well, together with a 1/8th interest in the lease upon completion, did not serve to render the drilling contractor's drilling equipment subject to a lien asserted under the oil and gas lien statute.

Defendants in error stress that it is provided in Sec. 144, supra, that the lien shall be "upon the whole of such lease-hold", and argue that the Prue sand wells and Prue sand was a part of the "whole" and for said reason is subject to the asserted liens in controversy. The language so relied upon by defendants in error must be construed in the light of the clear statement in said Sec. 144 to the effect that only a person who has a "contract, expressed or implied, with the owner" may assert a lien.

In view of the contentions made by defendants in error, the fact that plaintiffs in error's contention, based upon the proposition that a lien claimant must have an express or implied contract with the owner of the property against which a lien is asserted is well founded, does not serve to develop that they are entitled to prevail herein. We will take up defendants' remaining contentions in the order that same have heretofore been stated.

The defendants in error assert that Nix v. Brogan, 118 Okl. 62, 251 P. 753, sustains their contention to the effect that "where an owner of an interest in oil and gas rights conveyed by a lease assigns and transfers his interest to another for the purpose of operating the lease, for a part of the production, his rights retained may be subjected to statutory liens of materialmen and oil well drilling contractors the same as the rights acquired by the transferee." The fourth paragraph of the syllabus of the cited case serves to develop the pertinent facts and the law applied to said facts. In said paragraph it is stated that "where an owner of an interest in oil and gas rights conveyed by a lease assigns and transfers his interest to another for the purpose of operating the lease, for a part of the production, his rights retained may be subjected to statutory liens of materialmen and oil well drilling contractors the same as the rights acquired by the transferee; and, where such transferee breaches the contract to keep the property free of such liens, and the interests of his assignor are wiped out by reason of the breach, it is not error to render judgment against the transferee for the amount the assignor's interests sold for at the lien foreclosure." Plaintiffs in error concede that the quoted pronouncement applies to the 1/16th interest that plaintiffs in error reserved, but they assert that said pronouncement does not apply to the Prue sand wells and Prue sand because Rumley and Cooper at no time acquired an interest in said wells or sand and did not undertake to operate or develop same. The development operations carried on by Rumley and Cooper obviously did not and could not have bettered or improved the Prue sand wells or the Prue sand. Therefore, authority for impressing the lien asserted by defendants in error upon said properties on the grounds that plaintiffs in error as the owners of said properties benefited or could possibly have benefited does not exist.

The defendants in error's contention based upon the proposition that Rumley

and Cooper acted as plaintiffs in error's agent is not well taken. The record as aforesaid develops that Rumley and Cooper had no right, title or interest in the Prue sand wells and Prue sand and in fact had no connection of any kind with said property or the operation thereof. Rumley and Cooper unquestionably did not enter into the contracts in controversy in order to improve the Prue sand wells or the Prue sand and for said reason they cannot in fact or in equity be said to have been acting as the agents for McInnes and Britten in so far as said properties are concerned.

The record fails to sustain defendants in error's contention that plaintiffs in error are estopped to deny that Rumley and Cooper acted as their agents in obtaining the services and supplies that gave rise to the liens here asserted. At the time said services were rendered and the supplies furnished, plaintiffs in error were in possession of the South 50 and producing the three Prue sand wells and the record title showed that they owned the lease in so far as same covered said 50. These facts were sufficient to give defendants in error notice of plaintiffs in error's claim of ownership to the Prue sand wells and the Prue sand. We add, that had the defendants in error made inquiry they no doubt would have learned of the agreement that led up to the November 10, 1955 assignment and of the assignment. No claim is here made of fraud or collusion on the part of plaintiffs in error and Rumley and Cooper.

There is no evidence tending to support defendants in error's contention to the effect that plaintiffs in error "ratified the lease-hold development by claiming and recording their benefits thereunder with full knowledge of the facts". As pointed out, no benefits accrued to the Prue sand wells or Prue sand from Rumley and Cooper's development operations, and plaintiffs in error concede that the only property which they own that was benefited (the overriding 1/16th interest which is set out in the recorded assignment) was properly impressed with defendants in error's liens.

 For reasons herein set forth, this case is reversed and the trial court is directed to enter judgment for plaintiffs in error cancelling the lien asserted by defendants upon the Prue sand wells drilled on the South 50 and the Prue sand underlying said 50. If the plaintiffs in error elect to claim an attorney's fee because of this action, the trial court shall consider and allow attorney's fees in an amount that accords with the facts and the law applicable to the facts.