HERMANN L. MEYER *vs.* WILLIAM BERLANDI and others.

BOHN MANUFACTURING COMPANY *vs.* WESLEY J. JAMESON and Wife, impleaded, etc.

November 22, 1888.

**Constitution—Mechanic's Lien Act of 1887.**—The following provisions of chapter 170, Laws 1887, (mechanic's lien law,) *held* unconstitutional: (1) That part of section 2 making homesteads subject to liens. (2) Section 3, making the mere failure of a contractor, who has received his pay from the owner, to pay his laborers and material-men, (although he may not be guilty of any fraud,) a felony punishable by imprisonment in the penitentiary. (3) Section 5, making the fact that the person who performed the labor or furnished the material was not enjoined by law by the owner from doing so conclusive evidence that the labor was performed or material furnished with his consent. (4) The provision of section 8 declaring that the deed of the sheriff on a sale under a lien shall take precedence of any other title; and that of section 10, which assumes to give a mechanic's lien precedence over prior incumbrances. (5) Section 11, making it the duty of the courts, in case of doubt as to the construction of the act, to construe it so as to give the person performing any labor the full amount of his claim.

**Main Provisions of Statute Unconstitutional—Whole Act held Void.** *Held,* that within the rule laid down in *O'Brien* v. *Krenz,* 36 Minn. 136, these provisions constituting, as they evidently did, the chief inducement for the enactment of this law as a substitute for the former statute, and many of them being intimately connected with the substance and general plan of the act, it cannot be reasonably presumed that the legislature would have enacted the balance of the law with these invalid provisions omitted. Therefore the whole act must be held invalid, and Gen. St. 1878, c. 90, on the same subject, remains in full force.

**Mechanic's Lien—Office of Filing Statement.**—The filing of a verified statement for record operates as the creation of the lien, and until this is done an action to enforce it cannot be maintained.

**Pleading—Office of Supplemental Complaint.**—If a complaint states no cause of action, it cannot be sustained by a supplemental pleading setting up matters that have occurred after the commencement of the suit. The office of a supplemental complaint is merely to enlarge or change the relief to which a party may be entitled upon a cause of action existing at the time of the commencement of the suit.

Actions to enforce mechanics' liens, brought in the district court for Ramsey county.    In the first case, (*Meyer* v. *Berlandi*, begun in 1887,) the plaintiff alleged the performance of labor and furnishing of the materials by plaintiff, as subcontractor, in the construction of a building which Wegmann & Kleimann were erecting under a contract with defendant William Berlandi, on land belonging to him in the city of St. Paul.    The complaint alleged that plaintiff's subcontract was made March 28, 1887; that his work was done and materials furnished between April 1, and July 25, 1887; that the sum of $1,409 remains due plaintiff on his subcontract; that within 90 days from the completion of his work, and on September 21, 1887, the plaintiff filed in the registry of deeds for Ramsey county a duly-verified statement of account and claim of lien, which was recorded on the same day; and on the same day he personally served a copy on the defendant William Berlandi.    The defendants, in an amended answer, set out a copy of the plaintiff's verified lien-statement.    The plaintiff, in his reply, admitted the truth of this part of the answer, and afterwards, and on April 7, 1888, moved for leave to amend the complaint by inserting an allegation that on January 11, 1888, he filed in the registry of deeds for Ramsey county a duly-verified account in writing of the items of labor performed and materials furnished and of the value thereof, which was duly recorded, and a copy of which is part of the proposed amendment, and conforms with the requirements of Gen. St. 1878, *c.* 90.    The motion was denied by *Brill,* J., who thereafter granted defendants' motion for judgment on the pleadings, on the ground "that the verified statement of lien, a copy of which is set out in Exhibit B of the amended answer, is insufficient under Gen. St. 1878, *c.* 90, and that chapter 170, Laws 1887, is void."    Judgment was entered accordingly, and the plaintiff appealed.

In the second case (*Bohn Mfg. Co.* v. *Jameson*) the plaintiff sought to enforce a lien for material furnished by it to one Schmidt for use and used by him in erecting a building for defendant Jameson, on a lot belonging to him in St. Paul, under a contract with him.    The complaint contains a copy of the recorded lien-statement and affidavit, which follows the requirements of Gen. St. 1878, *c.* 90, and was filed for record within the time therein prescribed, but not within

the 90 days prescribed by Laws 1887, c. 170. The defendants Jameson and wife demurred to the complaint, and appeal from an order of *Wilkin*, J., overruling their demurrer.

*Smith & Hawthorne*, for appellant
*Warner & Lawrence*, for respondents } in first case.

*F. C. Stevens*, for appellants
*Kerr & Richardson*, for respondent } in second case.

MITCHELL, J. The question raised by these appeals is the validity of Laws 1887, c. 170, commonly known as the "Mechanic's Lien Law." While this statute has been several times before us for consideration, this question has never before been presented to the court. In *Pond Machine Tool Co.* v. *Robinson*, 38 Minn. 272, (37 N. W. Rep. 99,) the only question was whether the act left the former law in force as to past claims. In *State* v. *Brachvogel*, 38 Minn. 265, (36 N. W. Rep. 641,) all that was decided was that the provisions of the third section were germane to the subject expressed in the title. In *Jordan* v. *Board of Education*, ante, p. 298, the only question was whether the act made a public school-house subject to lien. In the present cases the validity of the entire act is assailed, mainly on the ground that it is unconstitutional, but also that it is so imperfect and incomplete as to be incapable of being carried into effect. It therefore becomes necessary to consider the whole act.

At the outset, we remark that an examination of it fully satisfies us that the act was intended to, and does, cover the whole subject covered by the former statute relating to mechanics' liens; having the same general purpose, and touching the same ground, at every point, but materially changing the legal rights of parties, and adopting a somewhat different method of enforcing them. It was therefore manifestly intended as a substitute for the former statute, and as to all future claims to be the only statute on the subject. Therefore, if valid, it works a repeal of the old law, notwithstanding the limited character of the repealing clause; and hence there is no chance to supplement it with any of the provisions of former law. In fact the two statutes, although having the same general purpose of giving liens to laborers and material-men, work on so different lines that there is hardly a provision of the old law that will fit into

the new. An examination of the act will also satisfy any lawyer that, even if all its provisions are valid, it is a very defective and incomplete skeleton, so badly lacking in working details that it would be very difficult to execute it, except by a system of construction by the courts bordering closely upon judicial legislation. Many of its provisions, too, are so obscure that much litigation would necessarily occur before its construction would become settled. We pass these considerations by, as they would not justify a court in declaring the act invalid if by any legitimate rules of construction its meaning can be ascertained and its provisions carried into effect.

But its incompleteness and obscurity are not the most serious objections to the act. Many of its provisions are flatly in violation of the constitution. The provision of the second section, giving a lien on homesteads, is clearly so. It is well settled in this state that a homestead cannot be made subject to a lien, in the absence of an agreement between the parties creating one. *Cogel* v. *Mickow,* 11 Minn. 354, (475;) *Coleman* v. *Ballandi,* 22 Minn. 144; *Keller* v. *Struck,* 31 Minn. 446, (18 N. W. Rep. 280.)

Section 3, if not unconstitutional on other grounds, is clearly repugnant to section 12, art. 1, of the constitution of the state, prohibiting imprisonment for debt. It is not necessary that a contractor be guilty of any fraud or other tort in order to subject him to the penalties of this section. If he has received his pay from the owner of the property, and owes a debt due on contract to one of his laborers or material-men which he is unable to pay, he is guilty of obtaining money on false pretences, and liable to imprisonment in the penitentiary. No matter how honestly he may have paid over the last dollar which he has received on his contract, yet if, through honest mistake, he took the job too cheap, or if by unforeseen accident it cost more than he anticipated, and for that reason he cannot pay all that he owes for labor or material, he is a felon. This is returning with a vengeance to the old barbarous fiction upon which imprisonment for debt was originally based, viz., that a man who owed a debt, and did not pay it, was a trespasser against the peace and dignity of the crown, and for this supposititious crime was liable to arrest and imprisonment. Such a statute cannot be sustained for a moment.

Section 5 of the act is also unconstitutional. As liens are an incumbrance upon the owner's property, it is fundamental that they can only be created by his consent or authority. No man can be deprived of his property without his consent or by due process of law. The basis of the right to enforce a claim, as a lien against property, is the consent of the owner, and it is upon this principle alone that laws giving liens to subcontractors are sustained. The contract of the owner with the contractor is, under the law, the evidence of the authority of the latter to charge the property with liabilities incurred by him in performing his contract. *O'Neil* v. *St. Olaf's School*, 26 Minn. 329, (4 N. W. Rep. 47;) *Laird* v. *Moonan*, 32 Minn. 358, (20 N. W. Rep. 354.) The legislature, seeming to have understood that such was the law, apparently attempted to evade it by providing in section 5 that the fact that the person performing labor or furnishing material was not enjoined by law from performing labor or furnishing material, by the person in whom the title was vested at the time, shall be conclusive evidence that such labor was performed or material furnished with and by the owner's consent. In short, if a wilful trespasser should go upon the land of another against his will or without his knowledge, and erect a building on it, and the owner of the land did not institute a suit, give bonds, and get out an injunction against the trespasser, he would be conclusively deemed to have consented to the erection of the building, and his land be subject to a lien in favor of the trespasser, although the owner might be entirely ignorant of the trespass until after the building was erected. The bare statement of such a proposition is sufficient. A man cannot be thus deprived of his property without his consent. The legislature may doubtless establish rules of evidence, but to enact a law making evidence conclusive which is not so necessarily in and of itself, and thus preclude a party from showing the truth, would be nothing short of confiscation of property and a destruction of vested rights without due process of law.

But perhaps the most objectionable provision of this statute, and one that goes to its very substance, is found in the tenth section, which provides that no incumbrance upon land, created *before* or after the making a contract or performing labor or furnishing ma-

terial, shall operate upon the building erected or material furnished until the lien for labor or material is satisfied. The same thing in a still more general form is found in section 8, which provides that the deed of the sheriff on the sale on the lien judgment "*shall take precedence of any. other title.*" This is a manifest attempt to displace all prior incumbrances upon, and vested interests in, the property, or at least to postpone them to liens under the statute subsequent in time, so that, for example, a mortgagor and a material-man or laborer, as a result of some arrangement between themselves, without the knowledge or consent of the mortgagee, might *improve* him out of his prior lien on the premises. Seeing the possible objection to this, counsel for one of the defendants takes the position that the act does not give a lien on the land, but only the building, and that it is only the latter that is to be sold. But in placing such a construction upon the law he only escapes Scylla to encounter Charybdis. To sell the building without the land would almost entirely destroy the security which the legislature designed for the protection of lienholders. We fail to see what the purchaser could do with the building, unless it would be to tear it down and remove the rubbish. If the building alone were sold, he would have no right to a foot of the land on which it stood. The title to real estate would be infinitely perplexed if one person owned the structure and another the land. Such a construction is entirely impracticable, and, if adopted, the law would be virtually incapable of execution. Hence, although the act is silent as to the land, it must be construed to include, as subject to the lien, that extent of ground, appurtenant to the building, which is reasonably necessary for its enjoyment. Such is the uniform construction of lien laws, even where there is no express statutory authority for charging the land. Phil. Mech. Liens, *c.* 17. Nor would the constitutional objection to this section be obviated by limiting the lien to the building. We apprehend there is no doubt but that the law gives a lien for labor or material that goes into the improvement or repair of an existing building, as well as for that which goes into the construction of an entirely new one ; and that in the former case, as well as the latter, the whole building is subject to the lien. So that even

in that case the lien would, under this law, cut out or take precedence of prior incumbrances as to part of the security.

Another counsel, while conceding and claiming that the land as well as the building is subject to the lien, attempts to sustain section 10 by another line of reasoning. He says that while it could not affect incumbrances made prior to the passage of the act, yet all those subsequently made would be taken in contemplation of the provisions of the law, and subject to them; and in support of his contention he cites those cases, notably *Smith* v. *Stevens*, 36 Minn. 303, (31 N. W. Rep. 55,) where chattels are left in the possession and use of the mortgagor, and a lien created by him for their keep or necessary repairs has been held entitled to precedence over the mortgage, although the latter was first in time. But we think counsel has mistaken the principle upon which all this class of cases rests. They all rest upon the doctrine of agency,—authority, implied from the circumstances, from the mortgagee to the mortgagor, to create a lien for such a purpose. This is well expressed by Erle, J., in *Williams* v. *Allsup*, 10 C. B. (N. S.) 417, which was a case of a maritime lien on a vessel for repairs. In giving the lien precedence of the mortgage, he says, (p. 426:) "I put my decision on the ground that, the mortgagee having allowed the mortgagor to continue in the apparent ownership of the vessel, making it a source of profit and a means of earning wherewithal to pay off the mortgage debt, the relation so created by implication entitles the mortgagor to do all that may be necessary to keep her in an efficient state for that purpose. * * * The vessel has to be kept in a state to be available as a security to the mortgagee." The case is the same as if the mortgagee had been present when the order for repairs was given. So in *Hammond* v. *Danielson*, 126 Mass. 294, which was a case of a lien for repairs on a hack left in the possession of the mortgagor to be used in his business, Gray, C. J., says: "A lien on personal property cannot, indeed, be created without authority of the owner, but in the present case such an authority must be implied from the facts agreed." So in case of a horse left in the possession and use of the mortgagor. The animal must be fed in order to preserve it. The authority of the mortgagor to create a

lien for that purpose.is implied from the facts. But no case ever held that a mortgagor could, without the authority of the mortgagee, expressed or implied, create a lien on the mortgaged property so as to give it precedence of the mortgage. The law, whether common or statute, giving a lien, could not give it precedence of a prior incumbrance without authority from the mortgagee back of it. But in case of a mortgage of realty, there can be no implied authority from the mortgagee that the mortgagor may go on and create liens for erecting new buildings or improving existing ones that shall take precedence of his. mortgage. No facts exist in the nature of the transaction from which any such authority can be implied.

We are referred to a statute in the state of Illinois, (Rev. St. Ill. 1881, *c.* 82,) which it is claimed gives the lien of laborers and material-men precedence of prior mortgages, and which has been sustained by the courts of that state. *North Presbyterian Church* v. *Jevne,* 32 Ill. 214, 220, (83 Am. Dec. 261;) *Croskey* v. *Northwestern Mfg. Co.,* 48 Ill. 481. But it will be found that it is a very different. act from the one now being considered. It provides (section 17) that the previous incumbrance shall be preferred to the extent of the value of the land at the time the lien attached, and that the court shall ascertain and determine what proportion of the proceeds of the sale shall be paid to the several parties in interest. The cases cited illustrate how this works. The value of the land before the labor is performed or material furnished is first ascertained, then the amount of the *additional value* given to the property by the improvement, and when the property is sold the proceeds are distributed in that ratio; the anterior incumbrance being preferred to the extent of the value of the property at the time the mechanic's lien attached, and. the laborer or material-man taking priority to the extent of the additional value given to the property by him. This, in theory at least, gives the prior incumbrancer the benefit of his entire security, as it was when he took his mortgage. But our act gives the laborer or material-man a lien, not merely to the extent he has enhanced the value of the property, but to the full amount due him according to his contract with the owner, and gives that lien precedence as to the whole property. To illustrate how this might work. Suppose-

A., owning a house and lot worth $5,000, mortgages it to B. for its full value, and subsequently contracts with C. to enlarge or remodel the house for the agreed sum of $5,000, but the improvements only enhance the value of the property $1,000. C., not receiving his pay, files a lien for $5,000, on which the property is sold, and brings $6,000. Under this law C. would get $5,000, and B. only $1,000. Or, suppose it sold for only $5,000, C. would get the whole, and B. nothing. It is not in the power of the legislature to take away a man's property in this way. Third parties having vested rights in the land, and not parties or privies to the contract, cannot be prejudiced by a subsequent mechanic's lien. The law must leave it as it does any other incumbrance, to take effect in its order of time. The principle of constitutional law applies that no one can be deprived of his property without his consent, except for public use, nor without due compensation first being made. Overton, Liens, § 536; *Brown* v. *Morison,* 5 Ark. 217; *Croskey* v. *Northwestern Mfg. Co.,* 48 Ill. 481.

It is no answer to this objection to say that all incumbrances or other interests in property, acquired subsequent to the passage of the act, must be deemed as taken subject to the provisions of the law, which enter into and form a part of the contract. This rule, which is a familiar one, always presupposes that the law is valid. It is no more in the power of the legislature to pass a law taking from a man, without his consent, and without process of law, property which he may thereafter acquire, than it is to pass a law depriving him of property which he had acquired before its passage.

Although not important by itself, it may be added that the eleventh section of the act is clearly void. It provides that, when any doubt exists as to the construction of the law, it shall be the duty of the court to construe it so as to give the person performing any labor the full amount of his claim, over and above costs and attorney's fees. This is a clear invasion of the functions of the judiciary. The legislature enacts the laws, but it belongs to the courts alone to construe them. Other provisions of the law, of at least doubtful validity, might be referred to, but we do not deem it necessary.

The important question remains whether the remainder of the stat-

ute can stand, or whether it must all fall. The rule laid down by Cooley, and adopted by this court, is that, if the provisions of the act are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and, if all could not be carried into effect, the legislature would not pass the residue independently, then, if some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected must fall with them. *O'Brien* v. *Krenz*, 36 Minn. 136, (30 N. W. Rep. 458.) Applying this rule to this case, we think the whole statute must fall. Some of these invalid provisions could doubtless be eliminated from the act, and the balance of it stand as the expression of the legislative will; but others are so intimately connected with the essential plan and scope of the act that there would not be enough left of it to make it capable of being carried into effect according to the legislative intent. The great object of the act manifestly was to give greater rights and fuller protection to laborers and material-men than they had under the old law, and the provisions which we hold invalid were evidently those which the legislature especially designed to effect that purpose, and which constituted the chief inducement to pass the act. It is hardly possible to conceive that, had the legislature supposed that these provisions were invalid, they would have enacted the remainder of the act as a substitute for the old law. The whole act must therefore fall, leaving Gen. St. 1878, *c.* 90, still in full force.

We are aware that a court ought not to declare invalid a solemn act of a co-ordinate branch of the government, except in a very clear case; but this seems to us to be such a case. Were any serious evils likely to result from holding this law invalid, we might hesitate. But there has been so much doubt, both as to the meaning and the validity of this act, that we apprehend almost every careful lawyer has taken the precaution, where the necessary facts existed, to bring all proceedings to enforce mechanics' liens within the requirements of the old law as well as the new. Again, even if the act could be sustained, it is so imperfect and obscure in many respects that much contention and litigation over its construction would inevitably fol-

low,—a state of things which would be especially disastrous to the very class which the law was intended to benefit. Therefore, looking merely to practical results, it is better for all parties that they be left under the provisions of the old law, and, if it is defective in any particular, the legislature can amend.

The result is that in the case of *Bohn Mfg. Co.* v. *Jameson* the claim of lien was seasonably filed, and the demurrer to the complaint was properly overruled. In the case of *Meyer* v. *Berlandi*, the claim for a lien first filed was insufficient; and, as the right to a lien is dependent upon the filing of a proper statement, deficiencies cannot be helped out by allegations in the complaint of facts which should be contained in the statement filed. Treating the proposed amendment to the complaint as a supplemental pleading, setting up the filing of another statement for a lien subsequently to the commencement of the action, the amendment was properly disallowed. The filing of the statement operates as the creation of a lien, and until this is done an action to enforce the lien cannot be maintained. *Rugg* v. *Hoover*, 28 Minn. 404, (10 N. W. Rep. 473.) If an original complaint is wholly defective, and there are no grounds for proceeding upon it, it cannot be sustained by filing a supplemental one, founded on matters which have subsequently taken place. A supplemental complaint can only enlarge or change the kind of relief to which a party may be entitled, where a cause of action exists at the time of the commencement of the action. *Lowry* v. *Harris*, 12 Minn. 166, (255.) The judgment of dismissal in this case must also be affirmed.

Order and judgment affirmed.