## PELTON, RESPONDENT, v. MINAH CONSOLIDATED MINING COMPANY, APPELLANT.

[Argued November 24, 1891. Decided December 7, 1891.]

11 281
12 549
28* 310
31* 552
11 281
d15 23
28* 310
37* 898

CONTRACTS— *Construction*— *Lease*— *Mechanic's lien.* — A contract between the proprietor of a mine and a third person, which provides that the latter is to make certain developments, the nature of which are specifically set forth, using the proprietor's machinery and timber, and may then mine so much of the ore as he may desire, in a designated manner, and to receive as full compensation for such developments a certain percentage of the net returns of the ore, and which also provides that a failure to keep said mine in active operation for a space of five days in any one month shall operate as an abandonment of the contract at the option of the proprietor, and that all liabilities incurred in any one month shall be discharged before the 15th of the ensuing month, the contract being limited to a year, is a lease, and being such, no lien is created against the mine in favor of one who labors for the lessee, as under the provisions of the mechanic's lien law the interests of proprietors in leased premises cannot be charged with liens for labor performed for the benefit of lessees.

*Appeal from Fifth Judicial District, Jefferson County.*

Action to foreclose a mechanic's lien. The cause was tried before GALBRAITH, J. Plaintiff had judgment below.

*Thomas Joyes,* for Appellant.

*Walsh & Newman,* for Respondent.

HARWOOD, J. — This action was brought to obtain judgment against the Minah Consolidated Mining Company for the sum of $33.35 for labor alleged to have been performed upon its Evening Star Mining Claim by respondent, and to foreclose a lien upon said mine to secure payment for such labor and costs of suit and counsel fees.

It is conceded, for the purposes of this case, that plaintiff was employed to work on said mine by one Alexander Swan, and all said labor was performed under his direction and management; and that Swan was in possession of and working said mine under a certain contract, which is fully set out in the record. Appellant contends that, under and by the terms of said instrument, said Swan was a lessee of said mine, and that such labor was employed and rendered to him in working said mine as a lessee thereof; that, therefore, the appellant is neither liable on said account, nor is said mine subject to a lien therefor. Sec-

tion 3 of "An act to amend an act entitled 'An act to amend an act relating to liens of mechanics and others,'" approved March 9, 1887 (Extra Sess. 1887, p. 71). Respondent contends, on the contrary, that said instrument is a contract entered into by said company with said Swan to do certain development work and mining on said mining claim for said company, for which said company is liable, and said mine is subject to a lien.

It is therefore necessary to determine whether, by the terms and conditions of said instrument, said Alexander Swan was in possession of and working said mine as a lessee thereof, or otherwise.

The instrument in question is in the form of a contract between said company, as party of the first part, and said Alexander Swan, party of the second part; and provides that he shall commence operations on said mine on or before the 1st of April, 1890, and "pump the water out of said mine; strengthen up and repair the shaft where necessary; run levels at the depth of one hundred feet, both east and west from the shaft, so far in either direction as the ore found will justify; properly square the levels and lag the same overhead; to mine the ore from overhead in a good, workman-like manner." The instrument goes on to further provide that said Swan shall sink a shaft one hundred feet in depth on the vein; that said shaft shall be of certain specified dimensions, and shall be timbered and faced in a certain manner; that at the bottom of said shaft said Swan shall run levels of stated dimensions and distances on the vein, providing in detail how such levels shall be timbered, and that "from over said levels said party is authorized to stope and mine so much of the ore as he may desire;" that the ore so mined shall be taken at the expense of said Swan to a certain mill for concentration, and the concentrates therefrom delivered by him at his own expense on board the railroad cars at Wickes Station; that said concentrates should be shipped by the appellant to such smelter as would pay the highest price therefor, and whenever the said Swan could find any purchaser of said concentrates at a higher rate than was being obtained by appellant, then, on his request, the appellant should ship to such purchaser as was found by Swan. The contract further provides that said Swan should "have, as full compensation for sinking said shaft,

running levels, stoping the ore, furnishing the timber, and hauling and delivering the ore to the cars, eighty per cent of the net returns as paid for said ore, by whichever smelting company the same may be shipped to." This, and nothing more, was he to receive by the terms of said contract for his operations in working said mine and extracting ore therefrom, except that he was to have the use of certain machinery belonging to the company and buildings on said mining claim, while working the same, and also the use of certain timber to be used in the mining operations. The term during which said Swan was authorized to work said mine under said contract is limited thereby to one year from April 1, 1890. It was further provided that, in case he should at any time during the continuance of said contract fail to keep said mine in active operation for the space of five days in any one month, such delinquency should, at the option of said company, be considered as an abandonment of said contract by Swan. It is further provided in said contract that said Swan should, before the 15th of each month, during the continuance of said operations, pay and discharge each and every liability incurred by him during the previous month in prosecuting such mining.

In view of all the conditions of said instrument, we cannot hold that said Swan occupied a relation to said company and mine other than that of lessee for the term mentioned in said contract. To hold otherwise would do violence to the accepted and understood meaning of terms.

In regard to what conditions constitute a lease, Mr. Justice Thompson, in delivering the opinion of the court in *United States* v. *Gratiot*, 14 Peters, 526, said: "The legal understanding of a lease for years is a contract for the possession and profits of land for a determinate period, with the recompense of rent. The contract in question is strictly within this definition. The business of smelting is a part of the operation of mining, although it may be a distinct branch from that of digging the ore; but the law ought not to be so construed as to require the whole operation to be embraced in the same contract. They are different operations, requiring different qualifications and distinct regulations. This contract is for the possession of land. The work is to be performed at the United States lead mines,

and must, of course, be performed within the limits prescribed by law to be attached to such mines. And there is an express permission to use as much fuel as is necessary to carry on the smelting business, and to cultivate as much land as will suffice to furnish teams, etc., with provender; and there is an express reservation of the rent of six pounds of every one hundred pounds of lead smelted, with special and particular specifications for securing the same. It is not necessary that the rent should be in money. If received in kind, it is rent, in contemplation of law."

In *Moore* v. *Miller*, 8 Pa. St. 272, Mr. Justice Coulter, in expressing the opinion of the court, says: "In estimating the language which constitutes a lease, the form of words used is of no consequence. It is not necessary that the term 'lease' should be used. Whatever is equivalent will be equally available. If the words assume the form of a license, covenant, or agreement, and the other requisites of a lease are present, they will be sufficient. (Co. Litt. 456; Bac. Abr. tit. 'Lease,' K.) An agreement that Miller should enter and dig for ore, build houses, etc., he to pay, as a compensation to the owner of the land, fifty cents a ton for every ton of ore, was, in substance and in fact, a lease."

Bouvier defines a "lease" to be "a species of contract for the possession and profits of lands and tenements, either for life or for a certain period of time, or during the pleasure of the parties." (1 Bouvier's Law Dict.)

"A 'lease' is a contract for the possession and profits of lands and tenements on the one side, and the recompense of rent or other income on the other, or it is a conveyance to a person for life, or years, or at will, in consideration of a return of rent or other recompense." (12 Am. & Eng. Encycl. of Law, 976.)

The instrument before us contains the elements which constitute a lease, of a character and for purposes common to the mining regions of this State, and it contains no provisions or conditions whereby we can hold it to be a contract of any other nature.

The statute in reference to liens underwent some amendment by the fifteenth legislative assembly at its regular session. Thereafter, at an extraordinary session of the same assembly, further

amendment was made by the passage of the act above cited, whereby it was provided, in effect, that the interests of proprietors in leased premises could not be charged with a lien for labor performed thereon for the use and benefit of tenants or lessees.   Therefore, said Swan being a lessee of said premises, we must hold, under the provisions of said statute, that the interests of appellant therein are not subject to the lien sought to be enforced against it in this action; and, said appellant not appearing to be otherwise liable for payment of said account (the proposition of appellant's liability resting entirely on said contract), the finding of the court that it is liable generally is also unsupported by the evidence.

It is therefore ordered that said judgment be reversed, and that judgment be entered in favor of defendant for costs.

*Reversed.*

BLAKE, C. J., and DE WITT, J., concur.