CHEARS FLOOR & SCREEN Co. *v.* GIDDEN *et al.*

(In Banc. Dec. 15, 1930.)

[131 So. 426. No. 28945.]

J. W. Crisler, of Clarksdale, for appellant.

C. A. Jaquess, of Tunica, for appellees.

**Anderson, J.**, delivered the opinion of the court.

Appellant brought this action against appellee in the county court of Tunica county for the purpose of establishing a lien on appellee's residence in the town of Tunica, in said county, for the payment of the sum of three hundred seventy-one dollars and sixty-seven cents, being the purchase price of certain materials furnished and labor performed by appellant, which went into the construction of appellee's residence. Appellee demurred to the petition, which demurrer was sustained by the court, and appellant was given leave to amend its petition, which leave it declined. Thereupon final judgment of dismissal was entered. From that judgment appellant appealed to the circuit court of the county, where the judgment of the county court was affirmed. From the judgment of the circuit court appellant appeals to this court.

The facts in this case are substantially the same as in the case of Planters' Lumber Co. v. Tompkins, 111 Miss. 307, 71 So. 565, with these exceptions: We have examined the record in that case on file in the office of the clerk of this court, and it shows that the structure there involved was an additional room built to Mrs. Tompkins' residence under a contract with, and on the credit of, her husband. It was a structure attached to a residence already in existence, not a new residence being built. In

the present case, the materials and labor furnished by the appellant went into a new residence being built on a lot owned by the appellee. The appellant's petition, however, is silent as to whether the entire residence was being built under a contract with and on the credit of appellee's husband, but it avers, in unmistakable terms, that the labor and materials in question were furnished to the appellee's husband under a contract with him and on his credit alone. The petition sets out that the lot on which the residence is situated is located in the town of Tunica; that the appellee's husband, in his own name, and on his own behalf and credit, entered into a written contract with the appellant, by the terms of which, for a consideration of three hundred seventy-one dollars and sixty-seven cents, the appellant agreed to furnish doors, screens, windows, window screens, and fixtures necessary, and to install same in the appellee's residence; that the appellant complied with its contract, but the appellee's husband failed and refused to pay the appellant according to the contract for the materials and labor so furnished; that in making the contract between the appellant and the appellee's husband the appellee was not known, but that the appellee knew that the appellant was furnishing the materials and doing the labor, and consented thereto, and occupied the building with her family as a residence.

Construing the petition most strongly against the pleader, it means that the entire residence building was being constructed by the appellee on her own account and with her own means, with the exception of the particular labor and materials here involved, which were furnished by the appellant under a contract with the appellee's husband and on his credit.

The appellant declined the leave granted by the court to amend its petition. If the entire residence building was being constructed under a contract with the appellee's husband, and on his credit, the appellant should have

amended its petition and set out those facts. Having failed to do so, it must be assumed as a fact that the building was being constructed by the appellee on her own account and on her own credit, except in so far as the labor and materials here involved are concerned, which the petition, as stated, avers were furnished under a contract with and on the credit of her husband.

This is a case, therefore, where the labor and materials were furnished the husband on his contract, and on his own credit, which went into the construction of a residence building in all other respects being constructed by the wife on her account, and on her own credit, on land owned by her, and for the payment of the labor and materials so furnished it is sought to subject such building of the wife to the lien provided by section 3060, Code 1906, section 2582, Hemingway's Code 1927, which follows:

"If such house, building, structure, or fixture be erected, constructed, altered, or repaired at the instance of a tenant, guardian, or other person not the owner of the land, only the house, building, structure, or fixture, and the estate of the tenant or such other person, in the land, shall be subject to such lien, unless the same be done by the written consent of the owner."

In the Tomkpins case the court held the entire residence building liable to the lien provided by the statute for the payment of the labor and materials that went into the construction of a room that was added to such residence.

Does the statute, so construed, have the effect of taking the property of the wife without due process?

In considering this question, it should be borne in mind that in this case, as in the Tompkins case, there was no conduct on the part of the wife which would amount to an estoppel against her. She was not called on to speak. The labor and materials were furnished to the husband under his contract, and on his credit, and appellant looked to the husband alone, until he defaulted in his obligation to pay.

The supreme courts of California, Minnesota, and Alabama have passed on the constitutionality of statutes similar to the one here under consideration. In the case of Santa Cruz Rock Pavement Co. v. Lyons, 117 Cal. 212, 48 Pac. 1097, 59 Am. St. Rep. 174, the California statute there under consideration provided that any person, who, at the request of the "reputed owner" of any lot in any incorporated city or town, fills in or otherwise improves the same, or the street or sidewalk adjoining the lot, or makes any improvements in connection therewith, shall have a lien upon such lot for the work done and materials furnished. The work and materials in that case were furnished to one James, claimed to be the "reputed owner" of the lot. It was a question in the case whether James was the "reputed owner" of the lot in the sense of the statute. The court, in deciding the case, however, assumed that he was such a "reputed owner;" and, in passing on the statute among other things, said:

"The owner of real property may by his acts or conduct be estopped from questioning the acts of a reputed owner of such property, and may thereby be bound by the acts of such reputed owner; but, in the absence of the elements of an estoppel, he will not be bound by the unauthorized acts of one who is merely reputed to be the owner of the land. He cannot be deprived of his title to the land, nor can a lien be imposed thereon, against his will, by virtue of any agreement or contract on the part of one who is merely reputed to be the owner of such land, unless he has in some way held such person out as the reputed owner, with authority to do the act or make the agreement by which it is sought to create the lien. It is no more within the constitutional power of the legislature to authorize a reputed owner of a lot or parcel of land to create a lien thereon against the will of the real owner than it would be to authorize such reputed owner to transfer the title to said land; and we

hold, therefore, that so far as the foregoing section of the Code purports to authorize the creation of a lien upon land by virtue of a contract for the improvement of the street adjacent thereto, entered into with one who is only the reputed owner of the land, or to affect the interest of the real owner therein, it is unconstitutional.''

Both Alabama and Minnesota passed statutes requiring an affirmative act of negation on the part of the owner of the property, in order to prevent the property from being subject to the lien. The courts of both of these states held the statute unconstitutional, as depriving the owner of his property without due process. In passing on the question, the Alabama court, in Randolph v. Builders', etc., Co., 106 Ala. 501, 17 So. 721, 724, used this language:

''The sixth section of the act provides 'that the fact the person performing labor or furnishing materials was not notified in writing not to perform such labor or furnish such materials, by the person in whom the title was invested, at the time such labor was performed or materials furnished, shall be prima-facie evidence that it was by and with the consent of the owner that such labor was performed and materials furnished.' This is a substantial copy of section 5 of the Minnesota Laws of 1887, except that their statute made the failure to enjoin the party not to furnish materials, conclusive evidence that it was done with the consent of the owner. Of this section, the supreme court of that state, in Meyer v. Berlandi, supra, says [39 Minn. 438, 40 N. W. 513, 1 L. R. A. 777, 12 Am. St. Rep. 663]: 'Section 5 is also unconstitutional. As liens are an incumbrance upon the owner's property, it is fundamental that they can only be created by his consent or authority. No man can be deprived of his property without his consent, or by due process of law. The basis of the right to enforce a claim, as a lien against property, is the consent of the owner, and it is upon this principle, alone, that laws giving liens

to subcontractors are sustained. The contract of the owner with the contractor is, under the law, the evidence of the authority of the latter, to charge the property with liabilities incurred by him in performing his contract.' . . . It is not denied, the legislature may establish proper rules of evidence, but not to the extent of depriving one of his property without due process of law; nor is it denied, that the owner's contract is made under and subject to the provisions of the existing lien law, provided these provisions do not infringe his constitutional rights. . . . The law should not constitute him their guardian, without their request, and hold him liable for things he never engaged to become responsible for, by contract express or implied in any just or fair sense.''

To the same effect are the cases of Wilson v. Andalusia Mfg. Co., 195 Ala. 477, 70 So. 140, 4 A. L. R. 1016, and Meyer v. Berlandi, 39 Minn. 438, 40 N. W. 513, 1 L. R. A. 777, 12 Am. St. Rep. 663.

In Wilson v. Andalusia Mfg. Co., supra, the wife not only knew of the repairs which her husband was having done on her property, and said nothing, but was constantly present while the work was being done, and gave directions as to how it should be done. In deciding the case, the court, while not commending the conduct of the wife and husband, said: ''Yet, the law's long-established rules should not be wrenched from their effects or denied efficacy to avert what proper caution and precaution on the part of the appellee [the materialmen] would have made impossible in this instance. The materialmen should have ascertained beforehand that the proposed improvement was to be of property not owned by the husband. To their lack of care for their own interests is to be attributed the opportunity this husband and wife have been afforded to receive the benefit of the improvement at the expense in part of this appellant [the materialmen].''

We see no escape from holding that this statute, as construed in the Tompkins case, is violative of due

process. So construed, it takes the property of the wife, without her consent, either express or implied.

But we think it manifest that the Tompkins case put an erroneous construction upon the statute, and that the statute, properly construed, is not violative of due process. The statute provides that, if the "house, building, structure, or fixture be erected, constructed, altered, or repaired at the instance of a tenant, guardian, or other person not the owner of the land, only the house, building, structure, or fixture, and the estate of the tenant or such other person, in the land, shall be subject to such lien, unless the same be done by the written consent of the owner."

We think the correct construction of the statute is this: If the house—the entire house—be constructed by the tenant, guardian, or other person not the owner of the land, then the entire building is subject to the lien, but not the lot in addition, unless the building is constructed with the written consent of the owner. And if a structure, for illustration, an added room, as in the Tompkins case, be erected by a tenant, guardian, or other person not the owner of the land, such structure alone is liable to the lien, provided it can be detached from and removed from the original building without injury to the latter. And the same would be true of any fixture erected or installed at the instance of the tenant, guardian, or other person not the owner of the land. If such fixture could be separated and removed from the building without injury to the latter, the fixture would be subject to the lien of the statute. And so with alterations and repairs on the building. If they are such as could be separated and removed from the building without injury to the latter—so as to leave the building in its original state—then the alterations and repairs alone would be subject to the lien. On the other hand, if anything less than the whole building be constructed at the instance of the tenant, guardian, or other person not the owner of the land, and the separation and removal of such structure, whether it be an

addition to the building, fixtures, or repairs, cannot be accomplished without injury to the original structure, the lien does not attach to either the complete building or such additions thereto; provided that in every case the person making the improvements is not a mere trespasser, and has some interest in the property, possessory or otherwise. There would be no lien for improvements made by a mere intermeddler.

There are two other sections of the statute, section 3068, Code 1906, section 2590, Hemingway's Code 1927, and section 3069, Code 1906, section 2591, Hemingway's Code 1927, which have a bearing on this interpretation of the statute. The first-mentioned section provides for a special writ of execution to carry out the judgment of the court, providing, among other things, that, when the judgment shall be "against the house, building, structure, *or fixture . . . without the land, . . .* a special writ of execution shall issue" describing the thing to be sold, and the other provides how the sale shall be made under certain conditions therein set out. This language is used: "If the sale be of the house, building, structure, *or fixtures alone . . .* the house, building, structure, *or fixtures so altered* or repaired shall be sold. (Italics ours.)

With that construction of the statute, there can be no taking of property without due process, since in every case provided for by the statute the owner of the property is left like he was found. If additions and repairs to his building can be removed without injury to the building, such additions and repairs are subject to the lien of the statute, while, on the other hand, if they cannot be so removed, the lien of the statute does not attach.

These views result, in the overruling of the Tompkins case and the affirmance of the judgment in this case.

Affirmed.

**Smith, C. J.,** delivered the concurring opinion.

I concur in the affirmance of the judgment of the court below, but not in the construction put on section 3060 of the Code of 1906, Hemingway's Code 1927, section 2582, by my brethren. It appears from the petition that the appellant screened the doors and windows of a house owned by the appellee, at the request, and on the credit, of her husband, but without her written consent thereto. I will assume that screening doors and windows of a house is an alteration or repair thereof within the meaning of the statute. If the appellee's husband is an "other person" within the meaning of the statute, then the appellant has a lien on the house, but not on the land on which the house is situated. The plain language of the statute is: "If such house . . . be . . . altered or repaired at the instance of a tenant, guardian, or other person not the owner of the land . . . the house . . . shall be subject to such lien."

No rule of construction of which I am aware warrants any limitation on the scope of this lien so clearly provided. That the statute grants a lien on "the house" repaired was assumed, apparently, by both the court and counsel in Planters' Lumber Co. v. Tompkins, 111 Miss. 307, 71 So. 565, for the only question there discussed in the opinion was this: Is the husband of the owner of a house an "other person within the meaning of the statute?" which question the court answered in the affirmative.

It is now suggested that, if the statute grants a lien on a house for repairs thereto, made at the instance of another than, and without the written consent of, the owner, it violates the due process clause of the Fourteenth Amendment to the Federal Constitution.

This necessitates a re-examination of the question decided in the Planters' Lumber Co. v. Tompkins case, supra, for, if the appellee's husband is not an "other person" within the meaning of the statute, no question of the constitutionality of the statute can here arise.

These general words "or other person" are preceded in the statute by words describing persons of a particular character who bear such relation to the land on which a house is situated as gives them the right, within limitations, to alter or repair the house. That the words "or other person" were not intended to broaden this classification is evidenced by the subsequent provision of the statute that "the estate of the tenant or such other person, in the land, shall be subject to such lien." The statute is a typical one for the application of the "ejusdem generis" rule, with reference to which Cyc., in volume 36, at page 1119, says: "By the rule of construction known as 'ejusdem generis,' where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. The particular words are presumed to describe certain species and the general words to be used for the purpose of including other species of the same genus. The rule is based on the obvious reason that if the legislature had intended the general words to be used in their unrestricted sense they would have made no mention of the particular classes. The words 'other' or 'any other' following an enumeration of particular classes are, therefore, to be read as 'other such like,' and to include only others of like kind or character."

So likewise say Anderson v. City of Hattiesburg, 131 Miss. 216, 94 So. 163; Greenville Ice, etc., Co. v. Greenville, 69 Miss. 86, 10 So. 574; Leinkauf v. Barnes, 66 Miss. 207, 5 So. 402.

The husband has no estate or present interest in his wife's property, and no right, except with her consent, to alter or repair houses belonging to her; and therefore is not an "other person" within the meaning of the statute.

It follows from the foregoing that I am of the opinion that Planters' Lumber Co. v. Tompkins, supra, should be overruled and the appellee's husband be held not to be an "other person" within the meaning of the statute. Should this be done, no question of the constitutionality of the statute could here arise.

**Cook, J.** (specially concurring).

I am not willing to concur in the construction placed on section 3060, Code 1906, section 2260, Code 1930, by the majority opinion, section 3058, Code 1906, section 2258, Code 1930, provides that "every house, huilding or structure of any kind, and any fixed machinery, gearing or other fixture that may or may not be used or connected therewith, . . . erected, constructed, altered, or repaired, shall be liable for the debt contracted and owing, for labor done or materials furnished, or architectural service rendered about the erection, construction, alteration, or repairs thereof," while section 3060, Code 1906, section 2260, Code 1930, provides that, "if such house, building, structure, or fixture be erected, constructed, altered, or repaired at the instance of a tenant, guardian, or other person not the owner of the land, only the house, building, structure, or fixture, and the estate of the tenant or such other person, in the land, shall be subject to such lien, unless the same be done by the written consent of the owner."

Under the construction placed on the latter statute by the majority opinion, if an entire house, building, or structure be constructed by a tenant, guardian, or other person not the owner of the land, there is a lien on such building or structure, but, if any part of the house, building, or structure, less than the whole, is erected or constructed at the instance of such other person, or with labor and material contracted for, or purchased by, such other person, there is no lien on the house or building

so constructed. Under this view a wife desiring to construct a house upon land owned by her could utilize labor contracted for and material purchased by her husband to the extent of seventy-five per cent—or any other per cent less than one hundred—of the total cost of labor and material necessary to complete the house, and there would be no lien thereon, and laborers and materialmen would be without remedy in the event the husband refused to pay, or was insolvent, for the reason that it would manifestly be impossible to separate and remove, without injury to the original structure, the value of the labor and any substantial part of the material that had been worked into and become a part of the completed house or building. The majority opinion holds that, where a building is altered or repaired at the instance of a tenant, or other person not the owner of the land, there is no lien on the building, and none on the alterations or repairs, unless they are such as can be separated and removed from the building so as to leave the building in its original state. This construction of the statute practically writes out of the provision giving a lien on a house, building, or structure, altered or repaired at the instance of a tenant, guardian, or other person not the owner of the land, for it will be an exceptional case where any substantial or extensive alterations or repairs of a house or building can be separated and removed therefrom without injury to the original house or building.

The language of this statute seems to me to be clear and unambiguous upon this point, and, in my opinion, in enacting it, the legislature never contemplated any such result as must necessarily follow the construction now placed on it. There is nothing in the language of the statute which limits the lien declared thereby to a completed house or building wholly erected or constructed by a tenant, guardian, or other person not owning the land, or to alterations and repairs that can be separated and removed without injury to the original house, build-

ing, or structure; and, if such had been the purpose and intent of the legislature, it could easily have used language to aptly express such purpose. In my opinion, the construction now placed on the statute, in effect, rewrites it and practically destroys its usefulness.

It follows from the views above expressed that I do not concur in overruling the case of Planters' Lumber Co. v. Tompkins, 111 Miss. 307, 71 So. 565, for the reasons and on the grounds stated in the majority opinion. With some degree of doubt and hesitation, I do concur in overruling that case, and in the affirmance of the court below, on the ground that the husband is not an "other person" within the meaning of the statute, and I am influenced so to do by the further language of this statute that "the estate of the tenant or such other person, in the land, shall be subject to such lien." The husband has no estate in the separate property of his wife.