DEWEY LUMBER CO., Respondent, *v.* McQUIRK et al., Defendants; WHITESEL, Appellant.

(No. 7,201.)

(Submitted February 6, 1934. Decided March 5, 1934.)

[30 Pac. (2d) 475.]

*Mr. George W. Howard,* for Appellant, submitted a brief and argued the cause orally.

*Mr. John D. Gillan,* for Respondent, submitted a brief and argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This is an appeal by the defendant Martha C. Whitesel from a judgment foreclosing two materialmen's liens filed against her property, one by plaintiff and the other by plaintiff's assignor, the Davis Mercantile Company.

The property, formerly defendant's home, consists of a house and lot in the city of Polson. When she removed with her family to Seattle, the property was rented. The house was habitable and occupied until about December 1, 1930, when the defendant by contract in writing agreed to sell the property to Alpha E. McQuirk for the sum of $1,850, payable as follows: $375 upon the execution of the contract, and the sum of $20 on the first day of each month thereafter until full payment of the purchase price. It was agreed that should Mc-Quirk fail to pay the taxes or assessments levied against the property when due, or make default in the payments required, Mrs. Whitesel at her option might declare the contract no longer binding upon her, and retain all payments theretofore made, as her absolute property. Time was made of the essence of the contract.

After taking possession of the property under the contract, Mrs. McQuirk and her husband, J. J. McQuirk, proceeded to repair and remodel the house. They purchased material for this purpose from the lien claimants, who knew Mrs. Whitesel

was the owner of the property which Mrs. McQuirk was buying on contract. The materialmen had no dealings whatever with Mrs. Whitesel with respect to the matter; all the materials furnished were charged to the McQuirks; the materialmen dealt directly with them.

When the contract of purchase was entered into, the house was a one-story affair, 24x24 feet in size; underneath was a small basement. The McQuirks made extensive improvements; they enlarged the windows, put in two new doors, remodeled the walls by affixing plasterboard thereto which they kalsomined, and painted the entire house, including the porch and the shingles. On the north side they made an addition one story high, 16x24 feet. In order to do that they took out the north end of the house and built in the other part. The original house had a shelf chimney, but the McQuirks built a new chimney from the basement floor resting partly on the old house and partly on the addition. The rooms were changed about and new floors put in. A new foundation was put under the house as reconstructed.

The McQuirks kept up the monthly payments required by the contract for a year, during a part of which the repairs and improvements were being made. Finding themselves unable to continue payments on the contract or to pay the amount due the lien claimants, they made default and relinquished all their rights in the property. One of the liens was filed in April, 1931, and the other in June, 1931. This action was commenced in March, 1932, by plaintiff, naming the McQuirks and Martha E. Whitesel as defendants. After the issues were made up by the pleadings, the cause was referred to a referee who took testimony.

During the trial Mr. McQuirk, a witness for plaintiff, was asked if it would be possible to remove the addition without interfering with the "old house," to which he answered that it would cut the house in two. "If we took the new part off it would leave the north end open. The roof is not in shape to be cut unless they rebuilt it."

Mr. Whitesel, a son of the defendant, said his mother was 76 years old, for some time living with him in Seattle, and that he managed her affairs. He said: "The addition added on was a part of the bedroom that was on when we lived there. The addition was a one-story addition to the north of the house. * * * The effect of moving the addition that was built on would be to cut the house in two and leave an opening there. * * * My mother did not know anything about those improvements being made. We first found out that the improvements were being made when Mr. Nash wrote that some one was making liens on the place." Mr. Whitesel probably meant the spring of 1931. However that may be, there is no doubt that the work was practically, if not altogether, completed before he knew anything of it.

After hearing all the testimony, the referee made findings of fact and conclusions of law in favor of plaintiff as against all defendants, and also in favor of defendant Whitesel against the defendants McQuirk. These the court adopted, rendering judgment for plaintiff against the defendants Alpha E. McQuirk and J. J. McQuirk for the full amount claimed, including attorney's fee, interest, and costs, amounting in the aggregate to the sum of $1,432.18 for which it declared the McQuirks personally liable, and further adjudged the entire amount to be first and valid liens upon the "dwelling-house, building, or structure" which it ordered sold to satisfy the amount found due plaintiff. The court also canceled the contract between the defendant Whitesel and the defendant Alpha E. McQuirk, and gave the defendant Whitesel judgment against the McQuirks for the sum of $100 attorney's fee.

There was not any contract, express or implied, between the defendant Whitesel and either of the lien claimants, nor was there an attempt to plead a contract between them or either of them; there was not any consent, implied or otherwise, by Mrs. Whitesel to the purchase of the materials or the making of the improvements by the McQuirks; there is not any provision in the contract of purchase requiring the purchaser to make any repairs or improvements upon the property pur-

chased. No question of estoppel or ratification was presented in the pleadings or otherwise, but, for that matter, upon the facts we do not see how there could be. There is no doubt that the lien claimants extended credit to the McQuirks alone.

Section 8339, Revised Codes 1921 (as amended by Laws 1925, Chapter 23), awards to a materialman a lien upon the property for which he furnishes material. But a mechanic's lien necessarily is bottomed upon an indebtedness. To render the owner or his property liable for a materialman's lien, the lien must rest upon a contract debt made either directly or indirectly with the owner of the property (*Pelton* v. *Minah Con. Min. Co.*, 11 Mont. 281, 28 Pac. 310; *Stenberg* v. *Liennemann*, 20 Mont. 457, 52 Pac. 84, 63 Am. St. Rep. 636), unless the owner chooses to ratify what has been done or in some manner estops himself to question the lien.

It is not sufficient that the work done or material furnished enhances the value of the property (*Belnap* v. *Condon*, 34 Utah, 213, 97 Pac. 111, 23 L. R. A. (n. s.) 601); otherwise a stranger might do work upon and furnish materials for the enhancement of the owner's property without the latter's knowledge or consent, and recover the value thereof.

Section 8342, Revised Codes 1921, provides that the lien "extends to the lot or land upon which any such building, improvement, or structure is situated * * * if the land belonged to the person who caused said building to be constructed, altered, or repaired; but if such person owned less than a fee-simple estate in such land, then only his interest therein is subject to such lien."

Section 8343 provides that "when the interest in the land, building, structure, or other improvement is a leasehold interest, the forfeiture of such lease does not forfeit or impair such liens so far as concerns the buildings, structures, and improvements put thereon by the persons charged with such lien, but the same may be sold to satisfy said lien, and may be removed within twenty days after the sale thereof by the purchaser."

The broad language of section 8343 does not, however, extend to repairs, remodeling, or improvements which have not become an integral part of the owner's building and which cannot be removed without material injury thereto. The rule is otherwise where a distinct and independent improvement has been placed upon the leasehold interest, one that can be removed without material injury to a pre-existing structure. The distinct and independent structure may be removed even if injury to the land results. (*Stritzel-Spaberg Lumber Co.* v. *Edwards,* 50 Mont. 49, 144 Pac. 772; compare *Interstate Lumber Co.* v. *Rider,* 93 Mont. 489, 19 Pac. (2d) 644.) Our statute does not provide, as some do, that the lessee shall be deemed the agent of the owner. (See notes to *Belnap* v. *Condon,* supra, 23 L. R. A. (n. s.) 601 et seq.)

Therefore, if the McQuirks had placed a new building upon the lot, the lien claimants, upon establishing their liens, would have been permitted to remove the building from the lot (*Stritzel-Spaberg Lumber Co.* v. *Edwards,* supra; *Midland Coal & Lumber Co.* v. *Ferguson,* 61 Mont. 402, 202 Pac. 389; *Morrow* v. *Dahl,* 66 Mont. 251, 213 Pac. 602; *Bartholomew* v. *James,* 76 Mont. 359, 246 Pac. 771); but not so when the materials simply went into the repairing, extending and remodeling an existing building.

It is clear that the repairs placed in the original residence, and the improvements made thereon including the so-called addition, cannot be removed without practically destroying the house itself; and the decree of the court directing the sale of the house to satisfy a lien of $1,432.18, is tantamount to depriving the appellant of her property without her fault—"improving" the innocent owner out of her property without her consent. The law will not tolerate such an assault upon property rights. The rule is "that no lien affecting the interests of the vendor or land can arise out of the doing of work or furnishing of materials pursuant to a contract with the purchaser. * * * A mere executory contract of purchase between others does not furnish a sufficient basis upon which

to predicate a mechanic's lien against the owner of the land." (40 C. J. 111, citing many cases.)

As we said in *Interstate Lumber Co.* v. *Rider,* supra, in which it was sought to establish a lien in preference to a prior mortgage, the test of preference, under our type of statute, is whether there is a distinct and independent improvement erected on the premises or merely repairs, extensions or remodeling of an existing building or structure. If the first, the lien has preference; if the second, the priority of the mortgage lien continues unimpaired. (40 C. J. 304, and cases there cited.)

It is so where the relations of either lessor and lessee, landlord and tenant, or vendor and purchaser upon a conditional sale contract, exist. In *Orear* v. *Dierks Lumber Co.,* 188 Mo. App. 729, 176 S. W. 467, 468, where the relation of lessor and lessee existed, the lessee had let a contract for the remodeling of the building by extending it forty feet in length and causing extensive changes in the interior. The materialman sought to foreclose liens upon the portion of the building which was added on to the original structure, but the court held against him, saying, *inter alia:* "It is well-settled construction of the mechanic's lien statute in this state that a subsequent lien cannot get precedence of a prior mortgage; that while an independent structure, erected after the mortgage was given, might be subjected to a mechanic's lien and removed in a reasonable time, no such right of removal can exist against buildings on the premises when the mortgagee acquired his lien. Thus in *Schulenburg* v. *Hayden,* 146 Mo. 583, 48 S. W. 472, it was held that where a building is partly destroyed by fire, and is restored by repair, the lien of the mechanic does not intrude itself on the mortgagee, and that no right of removal can be acquired. And that was our decision in *Dugan* v. *Scott,* 37 Mo. App. 663, 670. We think this is so analogous to the point in this case as to largely determine it." The court then went on to say that, if the lien claimant were permitted to remove the extended part of the building, it would result in practically destroying the entire building, and quoted the fol-

lowing from *O'Brien* v. *Pettis*, 42 Iowa, 293: "The defendants' rights depends upon the fact as to whether the building upon which these materials were furnished and work done is so far an independent structure as to be capable of being removed without materially injuring or destroying that which would remain, or whether it is so united with that which was before upon the lot as to constitute substantially the one building or structure." To the same effect and in point are *Johnson* v. *Soliday*, 19 N. D. 463, 126 N. W. 99; *James River Lumber Co.* v. *Danner*, 3 N. D. 470, 57 N. W. 343; *St. Paul & Tacoma Lumber Co.* v. *Bolton*, 5 Wash. 763, 32 Pac. 787; *Fine* v. *Dyke Bros.*, 175 Ark. 672, 300 S. W. 375, 58 A. L. R. 907; *Knapp* v. *Baldwin*, 213 Iowa, 24, 238 N. W. 542; *Chears Floor & Screen Co.* v. *Gidden*, 159 Miss. 288, 131 So. 426; *Pirtle* v. *Brown*, 141 Okl. 227, 284 Pac. 898.

The McQuirks were not "owners" within the purview of section 8349, Revised Codes 1921.

The burden is on a lien claimant to establish his lien (*Missoula Merc. Co.* v. *McDonnell*, 24 Mont. 65, 60 Pac. 594, 991; *Rogers-Templeton Lumber Co.* v. *Welch*, 56 Mont. 321, 184 Pac. 838), and this burden the plaintiff has failed to sustain. No liberality of construction can avoid this conclusion.

The cause is remanded to the district court of Lake county, with directions to the lower court to modify the judgment by eliminating therefrom the provisions which impose a lien upon the property of the appellant. In all other respects the judgment is affirmed. The appellant will recover her costs upon this appeal, together with a reasonable attorney's fee to be fixed by the district court pursuant to the provisions of Chapter 19 of the Session Laws of 1929.

ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS, STEWART and ANDERSON concur.